UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

TIMOTHY LALONDE &
THERESA LALONDE,

                       Plaintiffs,

      -against-                                  8:22-CV-0164 (LEK/DJS)

CITY OF OGDENSBURG, *et al.*,

                       Defendants.

---

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    INTRODUCTION

Plaintiffs Timothy Lalonde and Theresa Lalonde (collectively, "Plaintiffs") commenced this civil action on February 18, 2022, against Defendants the City of Ogdensburg, the City of Ogdensburg Police Department, Ogdensburg Police Department Chief Robert Wescott, Police Officers Charles Shaver, Danielle Pryce, Joshua Sirles, Scott Wilson, and Does 1–100 (collectively, "Ogdensburg Defendants"), as well as Saint Lawrence County, the Saint Lawrence County Sheriffs' Department, Saint Lawrence County Sheriff Brooks Bigwarfe, Sheriff Matthew Merria, and the aforementioned Does 1–100 (collectively, "Saint Lawrence Defendants").[1] Dkt. No. 1 ("Complaint").

Saint Lawrence Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 9 ("Saint Lawrence Defendants' Motion to Dismiss"). Subsequently, Ogdensburg Defendants filed a motion to dismiss for failure to state a

---

[1] The Court refers to the Ogdensburg Defendants and the Saint Lawrence Defendants collectively as "Defendants."

claim pursuant to Rule 12(b)(6). Dkt. No. 10 ("Ogdensburg Defendants' Motion to Dismiss"). Plaintiffs filed a response to Saint Lawrence Defendants' Motion to Dismiss, Dkt. No. 12 ("Plaintiffs' Response to Saint Lawrence Defendants"), and a response to Ogdensburg Defendants' Motion to Dismiss, Dkt. No. 17 ("Plaintiffs' Response to Ogdensburg Defendants"). Thereafter, Ogdensburg Defendants filed a reply, Dkt. No. 19 ("Ogdensburg Defendants' Reply") and Saint Lawrence Defendants filed a reply, Dkt. No. 20 ("Saint Lawrence Defendants' Reply").[2]

For the reasons that follow, the Court grants in part and denies in part Saint Lawrence Defendants' and Ogdensburg Defendants' Motions to Dismiss.

## II.    BACKGROUND

The following facts, which the Court assumes to be true at this stage, are taken from the Complaint. See Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 76 (2d Cir. 2015).

Timothy Lalonde "was rendered legally blind and partially disabled" because "of the aftermath of a life-threatening disease that severely diminished [his] physical abilities." Compl. ¶ 18. Specifically, "[o]n account of encountering and surviving a life-threatening flesh-eating bacteria in or around the year 2000" he "was left without his back, stomach, and right shoulder muscles which the surgeons had to remove in order to save [his] life." Id. ¶ 32. "In addition, the bacteria attacked his optic nerves which left him legally blind." Id. Thus, Plaintiff "lost the complete use of his vision, the right side of his upper body, any strength in his core torso having

---

[2] Saint Lawrence Defendants and Ogdensburg Defendants requested oral argument with respect to the Motions to Dismiss. Saint Lawrence Defs.' Mot. to Dismiss at 1; Ogdensburg Defs.' Mot. to Dismiss at 1. Local Rule 7.1(a) states: "Motions are decided without oral argument unless scheduled by the Court. Parties may make a written request for oral argument, which is subject to the discretion of the presiding judge." L.R. 7.1(a). The Court denies these requests for oral argument.

lost the muscles in his back, stomach and right shoulder" and experienced "chronic emotional and psychological stress from his disabled state." Id. ¶ 51.

On Sunday, March 1, 2020, at approximately 12:29 A.M., Officer Shaver "responded to 510 Pleasant Avenue, Ogdensburg, NY pursuant to a neighbor's 911 call informing dispatch that two neighbors were loudly arguing in front of one of the neighbor's homes." Id. ¶ 17. Shaver "heard the tail end of an exchange" between Timothy Lalonde and "his daughter's boyfriend, Randall Outlaw, who, along with [Timothy Lalonde's] daughter Ashley, resided at [Timothy Lalonde's] second home located next door to his residence at 506 Pleasant Avenue, Ogdensburg, NY." Id.

Before Timothy Lalonde's argument with Outlaw that evening, Theresa Lalonde, "[Timothy Lalonde's wife,] had picked up her husband from town and drove him to their home." Id. at ¶ 18. Theresa Lalonde is "charged with having to assist [Timothy] with various tasks relating to the maintenance of his personal hygiene and sight required tasks." Id. at ¶ 51. "Upon arriving at home[,]" Timothy Lalonde "exited the car and with his long white cane, tapped on the curb and made his way over to his second house" and had the "intention of speaking with his daughter's boyfriend, Randall Outlaw . . . ." Id. at ¶ 19. Timothy Lalonde "found Mr. Outlaw at home and strongly criticized him for discharging a firearm outside of [Timothy Lalonde's home] while his daughter Ashley was not home, and her three younger children were present." Id.

Thereafter, an argument between Timothy Lalonde and Outlaw ensued and "[c]oncerned with such a late-night confrontation, a nearby neighbor called 911 to report the argument." Id. ¶ 20. When Shaver arrived "the exchange between [Timothy Lalonde] and Mr. Outlaw had run its course." Id. ¶ 21. Because Timothy Lalonde is "legally blind [he] was unaware that" Shaver "had just momentarily arrived." Id. Theresa Lalonde asked Shaver "to inform her husband who he on

account [of] her husband [being] unable to see." Id. At this time, Timothy Lalonde "regained his composure and the encounter between" Timothy Lalonde and Outlaw "was complete." Id. ¶ 22.

However, "[a]pproximately three minutes after both [Shaver's] arrival and the complete de-escalation of the exchange between [Timothy Lalonde] and his daughter's boyfriend, several law enforcement patrol cars came screeching to halt in front of [Timothy Lalonde's] property." Id. ¶ 23. Officers Pryce and Sirles "leaped out of their [Ogdensburg Police Department] patrol vehicles and Sheriff Merria "jumped out" of his [Saint Lawrence County Sheriffs' Department] vehicle. Id. ¶ 24. Without "acknowledgement" of or "consultation" with Shaver "who was standing at the scene in firm control of a readily deescalated event with a blind man holding a cane and wearing dark sunglasses[,]" Pryce, Sirles and Merria "surrounded" Timothy Lalonde. Id. ¶ 25.

"Despite it being readily apparent that [Timothy Lalonde] was blind and sightless," Pryce "charged towards [him] and began screaming at him while circling around him." Id. ¶ 26. "On account of being sightless" Timothy Lalonde "tracked" Pryce's voice and "turned his body in her voice's direction." Id. ¶ 27. After Timothy Lalonde turned, Sirles, Shaver, and Merria "forcefully rushed toward [Timothy Lalonde] and slammed his body with such force that [his] body came to rest upon a driveway on the opposite side of the street." Id. ¶ 28. Upon "[h]earing the commotion," Theresa Lalonde "stormed out of her house screaming to" Pryce, Sirles, Shaver, and Merria "that her husband is blind and that 'you're killing my husband.'" Id. ¶ 29.

Sirles, Shaver, and Merria "pounced onto [Timothy Lalonde's] back," while Pryce "with her knee lifted, dropped her knee downward onto [his] ear[,] shattering and lacerating its inner cartilage." Id. ¶ 30. While these officers were "bashing [Timothy Lalonde's] head against the pavement," Merria "was yanking [his] left arm [and] ordering him to release it from under the

4

weight of his body." Id. ¶ 31. However, Timothy Lalonde "responded that he couldn't do it as he was disabled." Id. Timothy Lalonde "screamed that he was unable to comply with [Pryce, Sirles, Shaver, and Merria's] commands to move his body in order to free up his immobilized arm." Id. ¶ 33. As noted above, Timothy Lalonde "was left without his back, stomach, and right shoulder muscles" because surgeons had removed them in order to save his life after he encountered "a life-threatening flesh-eating bacteria . . . ." Id. ¶ 32.

Although Shaver "had just minutes before witnessed the de-escalation of [Timothy Lalonde's] encounter with his daughter's boyfriend[,]" including Plaintiff's "complete return to composure[,]" Shaver "inflicted two taser shots that jolted [Timothy Lalonde's] body." Id. ¶ 34. At the same time, Merria "ignor[ed Timothy Lalonde's] assertion that his disability prevented him from moving" and Merria "began aggressively yanking on [Timothy Lalonde's] left wrist, elbow and arm resulting in an audible 'pop' that left [him] numb with excruciating pain and a shattered broken wrist, fractured and dislocated elbow, and torn rotator cuff." Id. ¶ 35.

"With blood pouring from his ear and [Timothy Lalonde] grimacing with pain [while] crying out that his arm, elbow and wrist were broken," Pryce, Sirles, Shaver, and Merria "dragged him to the patrol car." Id. ¶ 36. However, because Timothy Lalonde "lacked stomach and back muscles to keep him upright when shackled with his handcuffs behind his back," Pryce, Sirles, Shaver, and Merria "'improvised' by lifting [Timothy Lalonde's] body and throwing him laterally into the patrol car[,] sending his head crashing against the opposite passenger door." Id. ¶ 37. "To secure [Timothy Lalonde] in the back of the patrol car," Pryce, Sirles, Shaver, and Merria "cuffed [his] right wrist and extending out his previously disabled right arm, attached it to the vehicle's ceiling while [he] lay prone across the back seats shivering with pain and repeatedly requesting medical assistance." Id. ¶ 38.

Pryce, Sirles, Shaver, and Merria arrived at the police station with Timothy Lalonde and "yanked [his] feet to pull him out from his prone position in the backseat of the patrol car" but "forg[ot] that they had secured [his] right arm and wrist to the back passenger ceiling . . . ." Id. ¶ 39. "After several forceful tugs that resulted in straining his previously disabled right arm, rotator cuff, and wrist that was attached to the vehicle['s] ceiling," Pryce, Sirles, Shaver, and Merria finally "recalled the means by which they secured him to the patrol car and released the handcuff from the ceiling." Id. Thereafter, Pryce, Sirles, Shaver, and Merria "yank[ed]" Plaintiff "out of the patrol car by his feet wherein he forcefully crashed to the ground in a heap." Id. ¶ 40. Then Pryce, Sirles, Shaver, and Merria "yanked [him] off the ground by his belt and back of his pants with such force that his jeans ripped and his leather belt tore in half." Id.

Despite the "knowledge" that Timothy Lalonde "was legally and categorically blind," the Defendant law enforcement officials "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability" as they brought him "into the police department to complete his arrest processing." Id. ¶ 41. Plaintiff was disoriented and "[w]ithout guiding [him] to a chair," Pryce, Sirles, Shaver, and Merria "watched [him] attempt to orient himself in the office seeking to locate a place to sit down." Id. While he was disoriented, Timothy Lalonde "accidentally brushed against" one of the Defendant officers "who screamed, 'don't touch me or I'll shoot you.'" Id.

During this time, Officers Does 1–100 and Chief Westcott "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him on charges of disorderly conduct and resisting arrest." Id. ¶ 42. Throughout "[t]he entirety of this time, blood from [Timothy Lalonde's] ruptured cartilage continued to trickle out from his ear while he

additionally experienced excruciating pain of a broken wrist, elbow and torn rotator cuff." Id. ¶ 43. When Plaintiff "repeatedly requested medical attention" he was "repeatedly ignored." Id.

Subsequently, Timothy Lalonde was interrogated, during which time Defendant law enforcement officials "fabricated" an "incident meant to provide an alternative explanation to account for [Plaintiff's] injuries . . . ." Id. ¶ 44. Defendant officers, including Wilson and Chief Westcott, "concocted a fallacious series of events that served to justify the grounds for their arrest and/or infliction of 'reasonable' force, i.e., [Plaintiff's] injuries occurred on account of his being drunk and inciting the [officers] to beat him, while purportedly claiming earlier in the evening that he was God and wanted to die, and that previous to his police encounter, he was 'jumped' by four unidentified men on Patterson Street in Ogdensburg." Id. ¶¶ 44, 91.

"After being made to stand against the stationhouse wall for one hour" while Defendant officers "attempted to have [Timothy Lalonde] subscribe and 'confess' to their fabrications, [Plaintiff] was finally permitted to obtain medical attention." Id. ¶ 45. When Plaintiff "was transported to Claxon-Hepburn Medical Center in Ogdensburg" the "Claxon-Hepburn medical staff rapidly evaluated that [his] medical condition was so severe and dire that he needed immediate transport to Upstate Medical University in Syracuse, New York, some three hours away." Id. ¶ 46. "After medical evaluation, it was determined that [Timothy Lalonde] incurred a severe cervical sprain, a broken left wrist, concussion syndrome, a torn rotator cuff tendon, a dislocated and fractured left elbow, and torn inner ear cartilage." Id. ¶ 47.

Subsequently, "[i]n order to substantiate [Timothy Lalonde's] arrest without probable cause and the unwarranted and patently unreasonable force inflicted upon him, the [Saint Lawrence County] District Attorney, upon reliance" of Defendant officers' "fabricated police reports, persisted in charging [Timothy Lalonde] with disorderly conduct and resisting arrest."

Id. ¶ 48. "After defending the fabricated charges by having to appear before the criminal court on approximately five court appearances, [Timothy Lalonde's] charges were dismissed on or about July 21, 2020." Id. ¶ 49.

Plaintiff asserts that the aforementioned conduct "has had an exponentially debilitative impact on [his] previous disabled state." Id. ¶ 50. Among the injuries Timothy Lalonde experienced were: "sustained brain damage, a torn left side rotator cuff tendon, a dislocated and fractured left elbow, and a torn cartilage in his right ear." Id. ¶ 52. "These injuries required [him] to undergo three surgeries resulting in the almost total incapacitation of his left upper body which previous to March 1, 2020 was his only functional and operational side on account of the damages caused by the flesh-eating bacteria." Id. This has rendered him "fully dependent on his wife [Theresa Lalonde's] assistance for all aspects of his daily needs." Id. Accordingly, Timothy Lalonde asserts that he "will require such complete and full care assistance, as well as requiring continuing medical treatment, for the balance of his life." Id. ¶ 53. Furthermore, Timothy Lalonde states that he has "incurred a loss of hearing on account of [Pryce's] . . . assault with her knee" and he has also "been exponentially afflicted by anxiety, mental and emotional distress, humiliation, fear, loss of enjoyment, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery." Id. ¶ 54.

The charges against Timothy Lalonde were dismissed on or about July 21, 2020. Id. ¶ 49. However, on or about April 1, 2021, "approximately one year" after the aforementioned conduct and "eight months after his criminal charges were dismissed," id. ¶ 55, "[u]pon the direction of the Ogdensburg Police Department and Chief Westcott, Officer Wilson "was ordered to make a service call to [Timothy Lalonde's] residence" and Wilson requested Timothy Lalonde "accompany him to the Police station[,]" id. ¶ 56. Wilson "informed [Plaintiff] that for some

undisclosed reason, the [Ogdensburg Police Department] failed to take [his] fingerprints, mugshots, and gather other information with respect to [Plaintiff's] March 1, 2020 arrest and subsequent prosecution." Id. Wilson told Plaintiff that "if he refused to accompany him to the Police station, that the [Ogdensburg Police Department] would seek a warrant for his appearance." Id. "Upon requesting an accommodation on account of his disability, [Wilson] vehemently refused." Id.

Timothy Lalonde "agreed to be taken to the Police station where" Wilson and Chief Westcott "commenced with re-interrogating him regarding the March 1, 2020 arrest" including the "utter fabrications" Plaintiffs allege had been previously made to attempt to justify the conduct of Shaver, Pryce, Sirles, and Merria. Id. ¶ 57. During this time, Plaintiff "experienc[ed] post traumatic and emotional distress under the circumstances . . . ." Id. Plaintiff asserts that Wilson and Chief Westcott were pursuing "an ongoing attempt to secure a coverup for their actions on [March 1, 2020], perpetuating the fabrication that [Timothy Lalonde] was attacked by four unidentified assailants on Patterson Street in Ogdensburg on the same evening that" Shaver, Pryce, Sirles, and Merria "attacked [Plaintiff] in front of his house." Id. ¶ 58.

Plaintiffs assert: (1) 42 U.S.C. § 1983 ("Section 1983") claims pursuant to the Fourth Amendment for false arrest, assault, battery, false imprisonment, and excessive force against Shaver, Pryce, Sirles, Merria, Wilson, Chief Westcott, and Does 1–100; (2) Section 1983 claims pursuant to the Fourth and Fourteenth Amendment for failure to intervene against Shaver, Pryce, Sirles, Merria, Chief Westcott, and Does 1–100; (3) Section 1983 claims pursuant to the Fourteenth Amendment for deliberate indifference to medical needs against Shaver, Pryce, Sirles, Merria, Chief Westcott, and Does 1–100; (4) Section 1983 conspiracy claims against Shaver, Pryce, Sirles, Merria, Wilson, Chief Westcott, and Does 1–100; (5) Section 1983 claims

pursuant to the Fourteenth Amendment for fabrication of evidence against Shaver, Pryce, Sirles, Merria, Chief Westcott, and Does 1–100; (6) Section 1983 municipal liability claims pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) against the City of Ogdensburg and Saint Lawrence County; (7) Section 1983 supervisory liability claims against Chief Westcott, Sheriff Bigwarfe, and Does 1–100; (8) claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701, et seq., against all Defendants; (9) 42 U.S.C. § 1985(3) ("Section 1985(3)") claims for conspiracy to deprive rights against all Defendants; (10) 42 U.S.C. § 1986 ("Section 1986") claims for neglect to prevent conspiracy to deprive rights against all Defendants; (11) New York State law claims for negligent infliction of emotional distress against Shaver, Pryce, Sirles, Merria, and Does 1–100; (12) New York State law claims for intentional infliction of emotional distress against Shaver, Pryce, Sirles, Merria, and Does 1–100; (13) New York State law claims for negligence against all Defendants; (14) a New York State law trespass claim against Wilson; and (15) New York State law claims for loss of consortium with respect to Theresa Lalonde against all Defendants. Id. ¶¶ 60–182. Plaintiffs also request injunctive relief. Id. at 36–38.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b), "a party may assert the following [defense] by motion: . . . (6) failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

U.S. at 556). This plausibility standard, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). The Supreme Court has stated that while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

"[A] defendant has the burden of proof on a Rule 12(b)(6) motion[.]" A.S. v. City Sch. Dist. of Albany, 585 F. Supp. 3d 246, 272 (N.D.N.Y. 2022); see also Pearl River Union Free Sch. Dist. v. Duncan, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014) ("'[T]he movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).'" (quoting Gonzalez v. Option One Mortg. Corp., No. 12-CV-1470, 2014 U.S. Dist. LEXIS 76789, at *7 (D. Conn. June 3, 2014))). Moreover, in the context of a Rule 12(b)(6) motion the Court "construe[s] plaintiffs' complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor.'" Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008)).

## IV.   DISCUSSION

### A.  Defendants' Arguments as to Plaintiffs' Assault and Battery and False Imprisonment Claims

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United

States] shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure

for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519

(2d Cir. 1993) (citation omitted).

Saint Lawrence Defendants argue, "[w]ith respect to assault and battery claims, there is

no federal common law for such torts, and thus, there can be no assault and battery claim

grounded in § 1983." Dkt. No. 9-3 at 6 ("Saint Lawrence Defendants' Memorandum of Law").

Saint Lawrence Defendants assert: "Instead, such claims are construed as an excessive force

claim." Id. Additionally, Saint Lawrence Defendants state: "Likewise, claims for false arrest and

false imprisonment are cut from the same cloth, and the false imprisonment claim is dismissed in

favor of the false arrest claim." Id. at 6–7. Ogdensburg Defendants reiterate the arguments

"noted in co-defendant St. Lawrence County's Memorandum of Law." Dkt. No. 10-1 at 3

("Ogdensburg Defendants' Memorandum of Law").

Plaintiffs respond:

Despite . . . wide breadth of protection afforded under Section 1983
claims grounded on Fourth Amendment protections and the
distinction between the kinds of seizures that the Amendment
protects, district courts in New York effectively conflate, as one
cause of action, the otherwise distinct Fourth Amendment violations
of false arrest and false imprisonment under the guise that these two
seizures are effectively the same, i.e., that in the interest of sound
judicial administration, the diminishment of the breadth and reach
of the rights afforded are otherwise justified.

Pls.' Resp. to Saint Lawrence Defs.' at 3. Furthermore, Plaintiffs assert that Saint Lawrence

Defendants "have misconstrued Plaintiffs' first cause of action as seeking separate Section 1983

claims under the Fourth Amendment, when instead, Plaintiffs have elicited the various means by

which Defendants violated Mr. Lalonde's rights under the Fourth Amendment in order to

12

advance the full breadth of his rights despite the court's limitation thereof on account of sound

judicial discretion." Id. at 3–4.

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"'[W]hether or not a search is reasonable within the meaning of the Fourth Amendment,'

[the Supreme Court has] said, never 'depend[ed] on the law of the particular State in which the

search occurs." Virginia v. Moore, 553 U.S. 164, 172 (2008) (quoting California v. Greenwood,

486 U.S. 35, 43 (1988)). "While '[i]ndividual States may surely construe their own constitutions

as imposing more stringent constraints on police conduct than does the Federal Constitution,'

state law did not alter the context of the Fourth Amendment." Moore, 553 U.S. at 172 (citation

omitted) (quoting Greenwood, 486 U.S. at 43). The Supreme Court "ha[s] applied the same

principle in the seizure context." Moore, 553 U.S. at 172. As the Supreme Court stated in Moore:

"We thought it obvious that the Fourth Amendment's meaning did not change with local law

enforcement practices—even practices set by rule. While those practices 'vary from place to

place and from time to time,' Fourth Amendment protections are not 'so variable' and cannot 'be

made to turn upon such trivialities.'" 553 U.S. at 172 (quoting Whren v. United States, 517 U.S.

806, 815 (1996)).

"[A] free citizen's claim that law enforcement officials used excessive force in the course

of making an arrest, investigatory stop, or other 'seizure' of his person . . . are properly analyzed

under the Fourth Amendment's 'objective reasonableness' standard . . . ." Graham v. Connor,

490 U.S. 386, 388 (1989). Thus, "[e]very person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest." Jackson v. Cnty. of Ulster, No. 22-CV-148, 2022 U.S. Dist. LEXIS 132123, at *5 (N.D.N.Y. July 26, 2022) (citing Graham, 490 U.S. at 395). "As in other Fourth Amendment contexts . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' . . . its proper application requires careful attention to the facts and circumstances at issue, whether the subject poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citation omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).

Thus, the Supreme Court has stated that the reasonableness of searches and seizures under the Fourth Amendment does not depend on state law. See Moore, 553 U.S. at 172. It is true that "a number of courts . . . have held that the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York State law." Jackson, 2022 U.S. Dist. LEXIS 132123, at *27; see also Posr v. Doherty, 944 F.2d 91, 95 (2d Cir. 1991) (stating that "except for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims] [a]re substantially identical" under New York State law).[3] However, the starting point for such

_____

[3] "Under New York Law, a civil assault is an intentional placing of another person in fear of imminent harm or offensive conduct." Jackson, 2022 U.S. Dist. LEXIS 132123, at *25–26 (citing Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001)). "To recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." Jackson, 2022 U.S. Dist. LEXIS 132123, at *26 (citing Morgan v. City of

analysis is "the <u>Graham</u> Fourth Amendment standard" which is "based upon the use of excessive force by the police." <u>Jackson</u>, 2022 U.S. Dist. LEXIS 132123, at *27. Accordingly, in <u>Jackson</u>, the court found that "because Plaintiff has stated a plausible Fourth Amendment claim against [a police-officer-defendant] based on the use of excessive force, and because Plaintiff's excessive force and battery claims are based upon the same factual circumstances, Plaintiff has stated a plausible civil battery claim against [the police-officer-defendant]." <u>Id.</u> at *27–28. Based on the plaintiff's plausible statement of a Fourth Amendment claim, the <u>Jackson</u> court said that "the civil battery claim will be allowed to proceed." <u>Id.</u> at *28.

Here, Saint Lawrence Defendants and Ogdensburg Defendants do not contest Plaintiffs' claims as to Fourth Amendment excessive force. Saint Lawrence Defs.' Mem. of Law at 6–7; Ogdensburg Defs.' Mem. of Law at 3. Indeed, both Saint Lawrence Defendants and Ogdensburg Defendants ask only for "partial dismissal" of the assault and battery claims. Saint Lawrence Defs.' Mem. of Law at 6; Ogdensburg Defs.' Mem. of Law at 3 (emphasis omitted). Saint Lawrence Defendants and Ogdensburg Defendants argue that this is necessary because such claims could be considered duplicative. Saint Lawrence Defs.' Mem. of Law at 7; Ogdensburg Defs.' Mem. of Law at 3.

Because Saint Lawrence Defendants and Ogdensburg Defendants appear to concede that Plaintiffs have plausibly stated Section 1983 Fourth Amendment excessive force claims "and because Plaintiff's excessive force and [assault and] battery claims are based upon the same factual circumstances[,]" the Court finds that "Plaintiff[s] ha[ve] stated a plausible [civil assault

---

Utica, No. 20-CV-1424, 2021 U.S. Dist. LEXIS 97271, at *11–12 (N.D.N.Y. May 21, 2021)). "A civil battery is an intentional wrongful physical contact with another person without consent, and may be accomplished either personally or by means of an instrumentality . . . ." <u>Jackson</u>, 2022 U.S. Dist. LEXIS 132123, at *27 (citations omitted) (citing <u>Girden</u>, 262 F.3d at 203 and <u>Relf v. City of Troy</u>, 169 A.D.3d 1223, 1226 (N.Y. App. Div. 2019)).

and] civil battery claim against" Shaver, Pryce, Sirles, Merria, Wilson, Chief Westcott, and Does 1–100. Jackson, 2022 U.S. Dist. LEXIS 132123, at *27–28. Therefore, in addition to Plaintiffs' Section 1983 Fourth Amendment excessive force claims, which are allowed to proceed, the Court also finds that the civil assault and "the civil battery claim[s] will be allowed to proceed" under New York State law. Id. at *28.[4]

       "The *common law tort of false arrest is a species of false imprisonment*, an action 'derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement.'" Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (emphasis added) (quoting Broughton v. State of New York, 27 N.Y.2d 451, 456 (N.Y. 1975)). Therefore, "Section 1983 claims for false arrest and false imprisonment are 'substantially the same' in all relevant respects as claims for false arrest and false imprisonment under state law." Levantino v. N.Y. State Police, 56 F. Supp. 3d 191, 199 (E.D.N.Y. 2014) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). Indeed, "[i]n New York, the tort of false arrest is synonymous with false imprisonment." Williams v. Olsen, No. 18-CV-1446, 2022 U.S. Dist.

---

[4] Supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which states: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under § 1367(a), claims "'form part of the same case or controversy'" if these claims, "'derive from a common nucleus of operative fact.'" Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)). Pursuant to § 1367(a), "a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). The Court exercises this subject matter jurisdiction over all of Plaintiffs' New York State law claims.

LEXIS 198224, at *40 (N.D.N.Y. Nov. 1, 2022) (Kahn, J.) (citing <u>Jacques v. Sears, Roebuck & Co.</u>, 30 N.Y.2d 466, 473 (N.Y. 1972) and <u>Posr</u>, 944 F.2d at 96).[5]

     Similar to Plaintiffs' excessive force and assault and battery claims, Saint Lawrence Defendants and Ogdensburg Defendants do not dispute that Plaintiffs have plausibly stated claims as to Fourth Amendment false arrest. Saint Lawrence Defs.' Mem. of Law at 6–7; Ogdensburg Defs.' Mem. of Law at 3. As stated above, both Saint Lawrence Defendants and Ogdensburg Defendants request "partial dismissal" of the false imprisonment claims. Saint Lawrence Defs.' Mem. of Law at 6; Ogdensburg Defs.' Mem. of Law at 3 (emphasis omitted). Similarly, Saint Lawrence Defendants and Ogdensburg Defendants argue that false arrest and false imprisonment claims are duplicative. Saint Lawrence Defs.' Mem. of Law at 7; Ogdensburg Defs.' Mem. of Law at 3.

     However, because "false arrest and false imprisonment are synonymous causes of action because the elements of the claims are identical[,]" <u>Levantino</u>, 56 F. Supp. 3d at 200, the Court sees no need to dismiss the false imprisonment claims. Since Saint Lawrence Defendants and Ogdensburg Defendants appear to concede that Plaintiffs have plausibly stated Section 1983 Fourth Amendment false arrest claims, and because "Section 1983 claims for false arrest and false imprisonment are 'substantially the same' in all relevant respects as claims for false arrest and false imprisonment under state law[,]" <u>Levantino</u>, 56 F. Supp. 3d at 199, the Court finds that Plaintiffs' Section 1983 Fourth Amendment false arrest claims and New York State false imprisonment claims are allowed to proceed.

---

[5] "In order to establish a claim for false arrest or false imprisonment under New York State law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." <u>Levantino</u>, 56 F. Supp. 3d at 200.

In addition, Saint Lawrence Defendants assert that "Plaintiff failed to allege any specific acts Officer Merria took which acted as a violation of Mr. Lalonde's rights." Saint Lawrence Defs.' Mem. of Law at 7. Saint Lawrence Defendants argue that Plaintiffs have not specifically identified the officer who dragged Timothy Lalonde into the patrol car, handcuffed him, or removed him from the patrol car upon arrival at the police station. Id. Similarly, Ogdensburg Defendants argue with regard to Pryce, Shaver, and Sirles, that "[n]o specific officer is identified" as to the aforementioned conduct. Ogdensburg Defs.' Mem. of Law at 3.

Under Federal Rule of Civil Procedure 8(d): "A party may set out two or more statements of a claim or defense alternatively or hypothetically, either a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Rule 8(d) also states: "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, "[w]ith respect to inconsistent pleadings, 'a complaint may plead in the alternative.'" Ajinomoto Co. v. CJ Cheiljedang Corp., No. 16-CV-03498, 2021 U.S. Dist. LEXIS 184945, at *7 (S.D.N.Y. Sept. 27, 2021) (quoting Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 616 n.10 (S.D.N.Y. 2003)). "The inconsistency may lie either in the statement of the facts or in the legal theories adopted . . . ." Henry v. Daytop Village, 42 F.3d 89, 95 (2d Cir. 1994) (quotations omitted).[6] This "flexibility . . . is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." Id.

---

[6] "Rule 8(d)[] [was] formerly Rule 8(e) . . . ." St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). While "[t]he court in Henry cited to former Rule 8(e)(2) . . . . [t]he relevant provision was restyled as Rule 8(d)(2)–(3) in 2007 . . . ." Moore v. Samuel S. Stratton VAH, No. 16-CV-475, 2019 U.S. Dist. LEXIS 8342, at *12 n.3 (N.D.N.Y. Jan. 17, 2019) (Kahn, J.).

"A plaintiff may not, however, be able to recover on both theories if the allegations conflict."
Ajinomoto, 2021 U.S. Dist. LEXIS 184945, at *7. "When viewed as alternative claims in the
initial pleading stage on a motion to dismiss, Rule 8(d)(2) allows the Court 'to construe separate
allegations in a complaint as alternative theories, at least when drawing all inferences in favor of
the nonmoving party as [the Court must do on] motions to dismiss . . . .'" Id. at *9 (quoting Adler
v. Pataki, 185 F.3d 35, 41 (2d Cir. 1999)).[7]

Accordingly, because Plaintiffs have properly alleged at least one constitutional violation,
Plaintiffs are permitted to plead in the alternative as to Defendants, and Plaintiffs are entitled to
discovery to determine which officers participated directly in the constitutional violation. See
Moore, 2019 U.S. Dist. LEXIS 8342, at *11 (finding under Rule 8(d)(2) and Henry, 42 F.3d at
95 that "it would be most appropriate to construe Plaintiff's pleadings—which indicate that
Plaintiff is unsure of which officer [was] Officer Russel and which [was] Officer Brunson—to
allege that the Caucasian officer who arrested him was *either* Brinson *or* Russell" (emphasis in
original) (citations and quotations omitted)).

---

[7] Some courts also look to Rule 20 when addressing pleading in the alternative when a plaintiff
pleads claims against multiple defendants. Rule 20(a)(2) states: "Persons . . . may be joined in
one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in
the alternative with respect to or arising out of the same transaction occurrence, or series of
transactions or occurrences; and (B) any question of law or fact common to all defendants will
arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Applying Rule 20(a)(2)(A), the Eleventh
Circuit permitted a plaintiff to plead in the alternative as to three law enforcement officials,
although plaintiff could not identify which specific official had struck him: "Because we
conclude that [plaintiff] sufficiently alleged that one of the three agents struck him in violation of
his Fourth Amendment rights, and that all three agents were present at the time, [plaintiff] can
plead in the alternative and pursue discovery to uncover the identity of the agent who allegedly
struck him." Saunders v. Duke, 766 F.3d 1262, 1268 n.2 (11th Cir. 2014).

### B.  Defendants' Arguments as to Plaintiffs' Failure-to-Intervene and Fabrication of Evidence Claims

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Saint Lawrence Defendants and Ogdensburg Defendants both concede this proposition. Saint Lawrence Defs.' Mem. of Law at 7; Ogdensburg Defs.' Mem. of Law at 4. However, Saint Lawrence Defendants contend that Plaintiffs cannot allege that Merria was both a direct participant in the alleged conduct and that he failed to intervene, arguing that "an officer who is alleged to have used excessive force cannot also be held liable for failure to intervene, because the officer's conduct as a direct participant in the violation of Plaintiff's rights precludes a finding that the officer passively collaborated in the deprivation of rights by a fellow officer." Saint Lawrence Defs.' Mem. of Law at 7–8. Likewise, Ogdensburg Defendants argue that Plaintiffs cannot allege that Pryce, Shaver, and Sirles, or other Ogdensburg Police Officers were both direct participants in the purported conduct and also failed to intervene. Ogdensburg Defs.' Mem. of Law at 4. Additionally, both Saint Lawrence Defendants and Ogdensburg Defendants reiterate their arguments that Plaintiffs did not specifically identify which officers were involved in dragging Plaintiff from the car or fabrication of evidence. Saint Lawrence Defs.' Mem. of Law at 8–10; Ogdensburg Defs.' Mem. of Law at 4–5.

As discussed above, where plaintiffs have properly alleged at least one constitutional violation, courts regularly permit such plaintiffs to plead in the alternative as to multiple defendants, finding that such plaintiffs are entitled to discovery to determine which officers participated directly in the constitutional violation. See, e.g., Matthews v. City of New York, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012) ("Because plaintiffs properly allege at least one

constitutional violation, plaintiffs are entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene."); Durr v. Slator, 558 F. Supp. 3d 1, 26 (N.D.N.Y. 2021) ("Plaintiff does not allege that either Defendant in particular acted with deliberate indifference by transporting Plaintiff to the Oneida Police Station rather than the Upstate Emergency Department. As such, Plaintiff is permitted to plead in the alternative that Defendants Clark and Slator failed to intervene in the alleged constitutional violation."). Moreover, under Rule 8(d) "[e]ven if [a plaintiff's] claims were somehow inconsistent . . . [a court] could and would entertain them both." Henry, 42 F.3d at 95–96. This "flexibility . . . is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." Id.

Accordingly, the Court finds that Plaintiffs are permitted to plead in the alternative as to Defendants with regard to the failure-to-intervene claims, and are entitled to discovery to determine which officers participated directly in the constitutional violations. See Matthews, 889 F. Supp. 2d at 444; Durr, 558 F. Supp. 3d at 26.

"'It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.'" Harris v. City of New York, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) (quoting Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000)). Saint Lawrence Defendants and Ogdensburg Defendants do not contest Plaintiffs' fabrication of evidence claims against Chief Westcott, Compl. ¶ 44, Defendants argue that Plaintiffs did not specifically identify which other officers were involved in the alleged fabrication of evidence. Saint Lawrence Defs.' Mem. of Law at 9–10; Ogdensburg Defs.' Mem.

of Law at 5.[8] Because Defendants do not challenge that Plaintiffs have properly alleged at least

one constitutional violation of fabrication of evidence, the Court finds that Plaintiffs are

permitted to plead in the alternative as to Defendants with regard to the fabrication of evidence

claims, and are entitled to discovery to determine which officers participated directly in the

constitutional violations. As the Second Circuit has stated, this "flexibility . . . is especially

appropriate in civil rights cases, in which complex inquiries into the parties' intent may

sometimes justify raising multiple, inconsistent claims." Henry, 42 F.3d at 95–96.

### C.  Defendants' Arguments as to Plaintiffs' Monell Claims

In Monell, the Supreme Court concluded that "Congress did intend municipalities and

other local government units to be included among those persons to whom § 1983 applies."

Monell, 436 U.S. at 690 (emphasis omitted). However, the Supreme Court also stated that "a

municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. (emphasis

in original). Municipalities are "liable under § 1983 to be sued as 'persons' within the meaning

of that statute, when the alleged unlawful action implemented or was executed pursuant to a

governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007).

"Constitutional deprivations actionable under § 1983 need not be contained in an explicitly

adopted rule or regulation." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir.

1992). "Constitutional deprivations actionable under § 1983 may be 'visited pursuant to the

---

[8] Saint Lawrence Defendants only argue against Plaintiffs' fabrication of evidence claims as they
relate to Merria. Saint Lawrence Defs.' Mem. of Law at 9–10. Ogdensburg Defendants only
argue against Plaintiffs' fabrication of evidence claims as they relate to "Shaver, Pryce, Sirles
and Wilson . . . ." Ogdensburg Defs.' Mem. of Law at 5.

governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels.'" Id. (cleaned up) (quoting Monell, 436 U.S. at 691).

"[T]o hold [municipalities] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)). "A plaintiff may satisfy the 'policy, custom or practice' requirement in one of four ways." Brandon v. City of New York, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010). Accordingly,

> [t]he plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Id. at 276–77 (citations omitted).

"[T]hree requirements . . . must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens." Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992). The Second Circuit has defined these three requirements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events.

Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Whether to use deadly force in apprehending a fleeing suspect qualifies as a "difficult choice" because more than the application of common sense is required. Instead, police officers must adhere to the rule of <u>Tennessee v. Garner</u>, 471 U.S. 1 [] (1985), that deadly force may constitutionally be applied to a fleeing suspect only when the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm and when, where possible, some warning has been given. A choice might also be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice.

Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. Thus, municipal policymakers may appropriately concentrate training and supervision resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights.

<u>Id.</u> at 297–98 (citations omitted) (quotations omitted). "Where the plaintiff establishes all three elements, then . . . it can be said with confidence that the policymaker should have known that inadequate training or supervision was 'so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'" <u>Id.</u> at 298 (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390 (1989)).

Saint Lawrence Defendants argue that "Plaintiffs fail to allege any similar constitutional violations that could even conceivably demonstrate a pattern of unconstitutional conduct." Saint Lawrence Defs.' Mem. of Law at 15. Saint Lawrence Defendants cite to <u>Buari v. City of New York</u>, 530 F. Supp. 3d 356 (S.D.N.Y. 2021), asserting that "[t]he decision in <u>Buari</u>, although the <u>Monell</u> liability claim was upheld on a motion to dismiss, provides helpful guidance to this Court." Saint Lawrence Defs.' Mem. of Law at 15. Saint Lawrence Defendants argue that <u>Buari</u>

24

stands for the principle that a plaintiff must plead systemic corruption in order to proceed on a

Monell claim, arguing: "Not once do the Plaintiffs allege that there were other instances of

misconduct and Plaintiffs do not identify any other lawsuits, report, complaints, or other

evidence to support their claim that the acts against Mr. Lalonde were part of a pattern." Id. at

16. Similarly, Ogdensburg Defendants assert that "there is not a single allegation of instances of

similar conduct or that the City of Ogdensburg knew of such prior actions by its police officers."

Ogdensburg Defs.' Mem. of Law at 9.

However, the Supreme Court has stated: "[I]t is plain that municipal liability may be

imposed for a single decision by municipal policymakers under appropriate circumstances."

Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). "So long as the single challenged act

was the decision of a municipal policymaker, the municipality could be held liable." Walker, 974

F.2d at 296. Accordingly, "[i]t may happen that in light of the duties assigned to specific officers

or employees the need for more or different training is so obvious, and the inadequacy so likely

to result in the violation of constitutional rights, that the policymakers of the [municipality] can

reasonable be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at

390. "For example, [municipal] policymakers know to a moral certainty that their officers will be

required to arrest fleeing felons." Id. at 390 n.10.

The Court turns to the three-prong test set forth in Walker. Under the first prong of

Walker, "the plaintiff must show that a policymaker knows to a moral certainty that her

employees will confront a given situation." 974 F.2d at 297. The Court finds that Saint Lawrence

Defendants' characterization of the Buari case is unavailing. In Buari, the court inferred that the

"Bronx DA [("district attorney")] officials plainly knew, to a moral certainty, that ADAs

[("assistant district attorneys")] would make probable cause assessments, offer testimonial

evidence in court, confront false or misleading testimony, and acquire <u>Brady</u>[ v. Maryland, 373 U.S. 83 (1963)] material 'because these are basic facets of an ADA's job.'" <u>Buari</u>, 530 F. Supp. 3d 406 (quoting <u>Bertuglia v. City of New York</u>, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012)). Likewise, the Court infers here that Saint Lawrence County and City of Ogdensburg policymakers plainly knew to a moral certitude that Saint Lawrence County sheriffs and City of Ogdensburg police officers would make reasonable suspicion and probable cause determinations, seize and arrest individuals, provide medical care to detainees, and transmit evidence to prosecutors, "because these are basic facets" of law enforcement officials' jobs. <u>Buari</u>, 530 F. Supp. 3d at 406 (quoting <u>Bertuglia</u>, 839 F. Supp. 2d at 738) Therefore, the Court finds that Plaintiffs have plausibly pled the first prong of <u>Walker</u>.

Saint Lawrence Defendants and City of Ogdensburg did not address the second or third prongs of <u>Walker</u> in their Motions to Dismiss. <u>See generally</u> Saint Lawrence Defs.' Mem. of Law; Ogdensburg Defs.' Mem. of Law. Saint Lawrence Defendants raised the second prong of <u>Walker</u> in their Reply. Saint Lawrence Defs.' Reply at 10–11. However, "[a]rguments may not be made for the first time in a reply brief." <u>Knipe v. Skinner</u>, 999 F.2d 708, 711 (2d Cir. 1993); <u>Chevron Corp. v. Donziger</u>, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or waived."). As noted above, the "movant[,] bears the burden of pro[ving no cognizable claim has been stated] on a motion to dismiss under Rule 12(b)(6)." <u>Leon v. Rockland Psychiatric Ctr.</u>, 232 F. Supp. 3d 420, 426–27 (S.D.N.Y. 2017); <u>see also</u> <u>United Rentals, Inc. v. Wilper</u>, No. 21-CV-01445, 2022 U.S. Dist. LEXIS 163400, at *3 (D. Conn. Sept. 2, 2022) ("The defendant bears the burden of proof on a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). Because Saint Lawrence Defendants and City of Ogdensburg Defendants have not met their burden of proving

that Plaintiffs have not stated cognizable <u>Monell</u> claims under Rule 12(b)(6), Defendants'

Motions to Dismiss are denied as to Plaintiffs' <u>Monell</u> claims.

### D.  Defendants' Arguments as to Plaintiffs' Section 1983 Conspiracy Claims, Section 1985(3) Conspiracy Claims, and Section 1986 Neglect to Prevent Conspiracy Claims

#### 1.  Section 1983 Conspiracy Claims

"To prevail on a Section 1983 conspiracy claim, the plaintiff must establish: (1) an

agreement between two or more state actors or between a state actor and a private entity; (2) to

act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that

goal causing damages." <u>Fiedler v. Incandela</u>, 222 F. Supp. 3d 141, 165 (E.D.N.Y. 2016)

(quotations omitted). "To sustain a claim for conspiracy under Section 1983, a plaintiff must

demonstrate that [the] defendant[s] 'acted in a willful manner, culminating in an agreement,

understanding, or meeting of the minds, that violated the plaintiff's rights . . . secured by the

constitution or federal courts.'" <u>Morpurgo v. Inc. Vill. of Sag Harbor</u>, 697 F. Supp. 2d 309, 331

(E.D.N.Y. 2010) (quoting <u>Malsh v. Corr. Officer Austin</u>, 901 F. Supp. 757, 765 (S.D.N.Y.

1995)), <u>report and recommendation adopted by</u> 697 F. Supp. 2d 309 (E.D.N.Y. 2010).

Saint Lawrence Defendants argue that Plaintiffs have failed to plausibly plead a factual

basis supporting a meeting of the minds, arguing that Plaintiffs' allegations that "Defendant

Officers 'acted in concert' and 'reached a mutual understanding[,]'" Saint Lawrence Defs.'

Mem. of Law at 10 (quoting Compl. ¶¶ 88, 93), "are conclusory and are not entitled to the

presumption of truth." Saint Lawrence Defs.' Mem. of Law at 10. Additionally, Saint Lawrence

Defendants argue that "the only reason Plaintiffs allege that they believe there was a conspiracy

under § 1983 is because the Defendant Officers arrived on scene at the same time and confronted

Mr. Lalonde at the same time and in the same manner." <u>Id.</u> Saint Lawrence Defendants contend:

"In essence, Plaintiffs are asking this Court to believe that because the officers acted the same

way in responding to the scene, they must have conspired." Id. at 10–11. Ogdensburg Defendants reiterate the arguments that "co-defendant St. Lawrence County points out in its brief . . . ." Ogdensburg Defs.' Mem. of Law at 6.

Plaintiffs argue that "[a] plaintiff is not required to list the place and date of defendants' meeting and summary of their conversations but the existence of an agreement can be inferred from circumstantial evidence of an agreement and concerted action." Pls.' Resp. to Saint Lawrence Defs.' at 9. According to Plaintiffs, '[w]hile it is imperative that a plaintiff must allege a mutual understanding or meeting of the minds in order to set out a prima facie claim for conspiracy, it is well established that such meeting of the minds can take the form of a 'tacit understanding' rather than an explicit agreement." Id. at 8 (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995)).

The Court agrees with Plaintiffs. While "'there are legal limitations upon the inferences which may be drawn from circumstantial evidence[,]'" Puglisi v. Underhill Park Taxpayer Assoc., 947 F. Supp. 673, 706 (S.D.N.Y. 1996) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 580 (1986)), "a conspiracy is often difficult to prove and . . . the court, may at times, have to rely on circumstantial evidence of a conspiracy," Puglisi, 947 F. Supp. at 706. Moreover, "a conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct[.]'" Foskey v. Northrup, No. 20-CV-0504, 2021 U.S. Dist. LEXIS 56684, at *12 (N.D.N.Y. Mar. 25, 2021) (Kahn, J.) (quotations omitted) (quoting LeBlanc-Sternberg, 67 F.3d at 427).

In Foskey, this Court observed that in the context of a Section 1983 conspiracy claim, "a meeting of the minds is plausibly suggested by the coordinated nature of the alleged attack, and

the fact that the attack was not a spontaneous reaction to any instant threat." Foskey, 2021 U.S. Dist. LEXIS 56684, at *11–12. The Court finds a similar situation here. The Defendant officers allegedly attacked Plaintiff in a manner that was not a spontaneous reaction to any threat—as Plaintiffs aver, Shaver "was standing at the scene in firm control of a readily deescalated event with a blind man holding a cane wearing dark sunglasses." Compl. ¶ 25. Moreover, as described above in great detail, Plaintiffs lay out extensive factual allegations pleading that the attack was coordinated, with various Defendant officers acting in concert. See, e.g., Compl. ¶¶ 25–45. Therefore, the Court finds that Plaintiffs have plausibly pled a meeting of the minds as to Section 1983 conspiracy. Accordingly, Defendants have not met their burden, and Defendants' Motions to Dismiss are denied with regard to Plaintiffs' Section 1983 conspiracy claims.

   *2. Section 1985(3) Conspiracy Claims*

   The relevant portion of Section 1985(3) states:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Thus,

> [t]o state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under

the laws; and 3) an act in furtherance of the conspiracy; 4) whereby
a person is either injured in his person or property or deprived of any
right or privilege of a citizen of the United States.

Britt v. Garcia, 457 F.3d 264, 269 n.4 (2d Cir. 2006) (quoting Gray v. Town of Darien, 927 F.2d

69, 73 (2d Cir. 1991)). Section 1985(3) "is applicable only if the plaintiff can show that 'some

racial, or perhaps otherwise class-based invidiously discriminatory animus [lay] behind the

conspirators' action.'" LeBlanc-Sternberg, 67 F.3d at 427 (quoting Griffin v. Breckenridge, 403

U.S. 88, 102 (1971)).

 "Establishment of a § 1985(3) claim requires proof of a conspiracy between 'two or more

persons.'" LeBlanc-Sternberg, 67 F.3d at 427. "A conspiracy, for these purposes, need not be

shown by proof of an explicit agreement but can be established by showing that the 'parties have

a tacit understanding to carry out the prohibited conduct.'" Id. (quoting United States v. Rubin,

844 F.2d 979, 984 (2d Cir. 1988)); see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003)

("In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis

supporting a meeting of the minds, such that defendants entered into an agreement, express or

tacit, to achieve the unlawful end.'" (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363

(S.D.N.Y. 2000)). "The term 'persons' for the purposes of § 1985(3) includes municipalities, and

a claim under § 1985(3) may be established against a state if 'it is proved that the State is

involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the

state[.]'" LeBlanc-Sternberg, 67 F.3d at 427 (citations omitted) (quoting United Brotherhood of

Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 830 (1983)) (citing

Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979)).

 Saint Lawrence Defendants argue that "Plaintiffs fail to allege any facts by which this

Court could infer discriminatory intent behind Defendants['] actions." Saint Lawrence Defs.'

Mem. of Law at 12. Specifically, Saint Lawrence Defendants assert that Plaintiffs have not explained why failure to consult with Shaver was motivated by discriminatory animus, id., and argue that "the act of ordering Mr. Lalonde to remove his arm from behind his back" was "motivationally neutral[,]" id. Similarly, Ogdensburg Defendants argue that "there is no factual assertion that the Ogdensburg Police Officers were motivated by a discriminatory animus." Ogdensburg Defs.' Mem. of Law at 7.

Plaintiffs plead that under Section 1985(3), Timothy Lalonde was protected in order "to be free from discrimination based upon disability . . . ." Compl. ¶ 139. "[T]he Second Circuit has recognized mental disability as a class protected by Section 1985 . . . ." B.D.S. v. Southold Union Free Sch. Dist., No. 08-CV-1864, 2009 U.S. Dist. LEXIS 55981, at *61 n.8 (E.D.N.Y. June 24, 2009) (citing People by Abrams v. 11 Cornwell Co., 695 F.2d 34, 42–43 (2d Cir. 1982), vacated in part on other grounds, 718 F.2d 22 (2d Cir. 1983)). "[T]hus, it logically follows that persons with other types of disabilities, i.e., learning and developmental disabilities, would also be part of a class protected by Section 1985." B.D.S., 2009 U.S. Dist. LEXIS 55981, at *61 n.8. Likewise, "it logically follows that persons with other types of disabilities[,]" id., such as Timothy Lalonde's blindness and other physical disabilities, Compl. at ¶¶ 32, 51, would be a part of a class protected by Section 1985(3).

The Second Circuit has stated that a plaintiff's "§ 1985(3) action cannot be judged groundless" where the plaintiff "stood a reasonable chance of inducing a court to find that [the defendant's] actions were based on a[] [class-based] animus . . . ." Colombrito v. Kelly, 764 F.2d 122, 130 (2d Cir. 1985). Plaintiffs plead that it was "readily apparent that [Timothy Lalonde] was blind and sightless[,]" Compl. ¶ 26, because Timothy Lalonde was "holding a cane wearing dark sunglasses" at night when Defendant officers were present, id. ¶ 25. Moreover, after Timothy

Lalonde was allegedly "slammed" onto the ground by Defendant officers, id. ¶ 28, Theresa
Lalonde "scream[ed] to the Defendant Officers that "her husband is blind . . . ." Id. ¶ 29. In
addition, after Merria "was yanking upon [Timothy Lalonde's] left arm ordering him to release it
from under the weight of his body [Timothy Lalonde] responded that he couldn't do it as he was
disabled." Id. ¶ 31. Timothy Lalonde "screamed that he was unable to comply with the
[Defendant officers'] commands to move his body in order to free up his immobilized arm." Id. ¶
33. Thereafter, Defendant officers "inflicted two taser shots" on Timothy Lalonde, id. ¶ 34,
"ruthlessly ignor[ed Timothy Lalonde's] assertion that his disability prevented him from
moving" and instead "aggressively yank[ed Timothy Lalonde's] left wrist, elbow and arm
resulting in an audible 'pop' that left [him] numb with excruciating pain and a shattered broken
wrist, fractured and dislocated elbow, and torn rotator cuff[,]" id. ¶ 35. In addition, due to
Timothy Lalonde's "lack[] [of] stomach and back muscles to keep him upright when shackled
with handcuffs behind his back" the Defendant officers "'improvised' by lifting [his] body and
throwing him laterally into the patrol car sending his head crashing against the opposite
passenger door[,]" id. ¶ 37.

Subsequently, Defendant officers "intentionally and mockingly refused to accommodate
[Timothy Lalonde's] disability when they ushered him into the police department to complete his
arrest processing[,]" id. ¶ 41, Doe Officers and Chief Westcott "persisted in ridiculing and
refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his
hands stretched out touching the wall while they interrogated and booked him[,]" id. ¶ 42, and
forced Timothy Lalonde "to stand against the stationhouse for one hour while [the officers]
attempted to have [Timothy Lalonde] subscribe and 'confess' to their fabrications[,]" id. ¶ 45.
Accordingly, the Court finds that Plaintiffs' pleading demonstrates that Plaintiffs "st[an]d a

reasonable chance of inducing a court to find that [Defendants'] actions were based on a[] [class-based] animus[,]" based on disability—here, the impairment of blindness and physical disability. Colombrito, 764 F.2d at 130.

Saint Lawrence Defendants and Ogdensburg Defendants also contend that Plaintiffs have not alleged a meeting of the minds with regard to Section 1985(3) conspiracy. Saint Lawrence Defs.' Mem. of Law at 11; Ogdensburg Defs.' Mem. of Law at 6–7. However, as noted above, "[a] conspiracy, for these purposes, need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" LeBlanc-Sternberg, 67 F.3d at 427 (quoting Rubin, 844 F.2d at 984). Plaintiffs have alleged that the Defendant officers carried out a coordinated attack outside his home and continued their actions in concert when transporting him to the police station, Compl. ¶¶ 25–40, that the Defendant officers acted in concert as they "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability when they ushered him into the police department to complete his arrest processing[,]" id. ¶ 41, and that Doe Officers and Chief Westcott together "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him[,]" id. ¶ 42. The Court concludes that Plaintiffs have plausibly pled that the "parties have a tacit understanding to carry out the prohibited conduct[,]" thereby plausibly pleading meeting of the minds under Section 1985(3). LeBlanc-Sternberg, 67 F.3d at 427 (quotations omitted). Therefore, Defendants have not met their burden, and Defendants' Motions to Dismiss are denied with respect to Plaintiffs' Section 1985(3) claims.

   *3. Section 1986 Neglect to Prevent Conspiracy Claims*

The relevant portion of Section 1986 states:

33

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . ."

42 U.S.C. § 1986. "[A] valid § 1986 claim must be predicated upon a valid § 1985 claim." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).

Here, Saint Lawrence Defendants state that "if the Court agrees with the County Defendants that Plaintiffs' § 1985 conspiracy claim should be dismissed, then Plaintiffs' § 1986 failure to prevent conspiracy clam should also be dismissed." Saint Lawrence Defs.' Mem. of Law at 13. Similarly, Ogdensburg Defendants assert: "This court must dismiss Plaintiffs' section 1986 claim that Defendants failed to prevent a conspiracy to deprive the Plaintiffs of their rights if it dismisses their Section 1985 conspiracy claim." Ogdensburg Defs.' Mem. of Law at 8.

Because the Court did not dismiss Plaintiffs' Section 1985(3) conspiracy claim, and because Saint Lawrence Defendants' and Ogdensburg Defendants' arguments hinge on this, the Court finds that Defendants have not met their burden, and Defendants' Motions to Dismiss are denied with regard to Plaintiffs' Section 1986 claims.

### E.  Defendants' Arguments as to Plaintiffs' Supervisory Liability Claims

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. "[A]fter Iqbal, there is no special test for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). "Instead, a plaintiff must plead and prove 'that each Government-official defendant,

through the official's own individual actions, has violated the Constitution.'" Id. (quoting Iqbal,

556 U.S. at 676).

Saint Lawrence Defendants and Ogdensburg Defendants make generalized arguments,

asserting that Plaintiffs have failed to plausibly plead claims of supervisory liability as to Sheriff

Bigwarfe and Chief Westcott. Regarding Sheriff Bigwarfe, Saint Lawrence Defendants argue

that "not one paragraph in the Complaint alleges that Sheriff Bigwarfe had any role in arresting

Mr. Lalonde, was present for the arrest, or was present or played a role in any of the alleged post-

arrest deprivations." Saint Lawrence Defs.' Mem. of Law at 17. Ogdensburg Defendants assert

that "[t]here is no particularity in the allegations with respect to what policy Chief Westcott is

even alleged to have created or condoned, let alone the conduct he deliberately disregarded."

Ogdensburg Defs.' Mem. of Law at 11.

"Tangreti makes clear that, 'after Iqbal, [a p]laintiff can no longer succeed on a § 1983

claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate

indifference that a constitutional violation would occur at the hands of his subordinates, *unless*

that is the same state of mind required for the constitutional deprivation." Myers v. Davenport,

No. 21-CV-0922, 2022 U.S. Dist. LEXIS 134752, at *12 (N.D.N.Y. July 29, 2022) (Kahn, J.)

(emphasis in original) (quoting Tangreti, 983 F.3d at 618). "Thus, an official's conduct in

making and executing policy, or failing to make or execute policy, may satisfy Iqbal's

requirement of personal involvement if such conduct meets the elements required to establish an

underlying constitutional violation and is undertaken with the required state of mind." Myers,

2022 U.S. Dist. LEXIS 134752, at *12. "Accordingly, a plaintiff may establish a policy-making

official's personal involvement by, first, alleging facts from which it may be reasonably inferred

the official was responsible for making relevant policies, and thus there was a tangible

connection between their policymaking conduct and the alleged harm." Id. at *12–13. "Second, a plaintiff must establish the elements of the underlying claim directly against each defendant." Id. at *13.

Here Plaintiffs bring, inter alia, Fourteenth Amendment failure-to-protect claims. Plaintiffs plead that Sheriff Bigwarfe was "a supervisory person with the [County of Saint Lawrence's Sheriff's Department] with oversight for training, hiring, screening, instruction, supervision and discipline of [Merria] . . . ." Compl. ¶ 118. Plaintiffs also plead that Chief Westcott "was, at the relevant times, supervisory personnel with Defendant [City of Ogdensburg Police] with oversight responsibility for training, hiring, screening, instruction, supervision and discipline of [Pryce, Sirles, Shaver, and Wilson] . . . ." Id. ¶ 117. According to Plaintiffs, Sheriff Bigwarfe and Chief Westcott "were reckless in their failure to supervise their respective subordinates and either knew or should have known that they were deliberately failing to effectuate connotationally permissible arrests with probable cause, seizures, detentions, transportation, imprisonments . . . ." Id. ¶ 120. Plaintiffs also assert that "[a]s a direct and proximate result of the unconstitutional actions, omissions, customs, polices, practices and procedures of [Sheriff Bigwarfe and Chief Westcott] . . . [Timothy Lalonde] has suffered: brain damage, a severe cervical sprain, whiplash, a broken left wrist, concussion syndrome, a torn left side rotator cuff tendon, a dislocated and fractured left elbow, torn cartilage in his right ear, hearing loss, anxiety, mental and emotional distress, humiliation, fear, discomfort, loss of enjoyment of life, psychic injuries, headaches, nightmares, insomnia, and an unceasing sense of doom and misery." Id. ¶ 123. Thus, the Court finds that Plaintiffs have plausibly pled that Sheriff Bigwarfe and Chief Westcott "were responsible for implementing and maintaining policies to protect . . . against constitutional deprivations and abuse . . . ." Myers, 2022 U.S. Dist. LEXIS

36

134752, at *14. Accordingly, the Court finds that these facts plausibly show that Sheriff Bigwarfe and Chief Westcott were policymakers.

"The Supreme Court [has] extended the protections for prisoners established in Estelle [v. Gamble, 429 U.S. 97 (1976)] to civil detainees under the Due Process Clause of the Fourteenth Amendment, reasoning that persons in civil detention deserve at least as much protection as those who are criminally incarcerated." Charles v. Orange Cnty., 925 F.3d 73, 82 (2d Cir. 2019). "[D]eliberate indifference means the same thing for each type of claim under the Fourth Amendment[,]" "such as from unconstitutional conditions of confinement, or the failure-to-protect . . . ." Darnell v. Pineiro, 849 F.3d 17, 33 n.9 (2d Cir. 2017); see also Charles, 925 F.3d at 87.

To plead a Section 1983 failure-to-protect Fourteenth Amendment claim, "[a] pretrial detainee" plaintiff must "show[] that the officers acted with deliberate indifference . . . ." Darnell, 849 F.3d at 29. The "pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the [failure-to-protect was] sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a 'mens rea prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." Id. To show this mens rea or mental element prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant knew, or should have known, that the condition posed an excessive risk to health or safety." Id. at 35. Thus, "the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively[,]" id., and "deliberate indifference, in the context of a Fourteenth Amendment due

process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind[,]" Charles, 925 F.3d at 86.

To plead the first objective prong, "the deprivation alleged must be, objectively, 'sufficiently serious,'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and "[f]or a claim . . . based on a failure to prevent harm" the detainee "must show that he is [detained] under conditions posing a substantial risk of serious harm[,]" Farmer, 511 U.S. at 834. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Pretrial detainees have even more stringent constitutional protections under the Fourteenth Amendment than prisoners do under the Eighth Amendment, because "most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) (citing Ingraham v. Wright, 430 U.S. 651, 671–72 n.40 (1977) and Graham, 490 U.S. at 395 n.10).

Here, the Court finds that Plaintiffs' factual allegations, asserting that Timothy Lalonde was maliciously and sadistically attacked by several Defendant Officers outside his home and was further abused at the police station during his detention, Compl. ¶ 26–45, plausibly show that Timothy Lalonde was detained under conditions posing a substantial risk of serious harm. Thus, Plaintiffs have plausibly pled the objective deliberate indifference prong.

Under the second mens rea or mental element prong, "[w]hether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Charles, 925 F.3d at 87. "'A factfinder may conclude that a [government] official knew of a substantial

risk from the very fact that the risk was obvious." Charles, 925 F.3d at 87 (quoting Farmer, 511 U.S. at 842).

"Federal Rule of Civil Procedure 9(b) provides a relaxed standard for pleading intent or knowledge at the motion to dismiss stage." Myers, 2022 U.S. Dist. LEXIS 134752, at *16; see also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Therefore, "[a] complaint is allowed to contain general allegations as to a defendant's knowledge, because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 864 (2d Cir. 2021) (citations omitted) (citing Fed. R. Civ. P. 9(b)) (quoting Connecticut Nat'l Bank v. Flour Corp., 808 F.2d 957, 962 (2d Cir. 1987)). "[P]laintiffs are required to include allegations of the facts or events they claim give rise to an inference of knowledge." Kaplan, 999 F.3d at 864.

Here, Plaintiffs have alleged that Sheriff Bigwarfe and Chief Westcott "were reckless in their failure to supervise their respective subordinates and either knew or should have known that they were deliberately failing to effectuate constitutionally permissible arrests with probable cause, seizures, detentions, transportation, imprisonments . . . ." Id. ¶ 120. As noted above, Plaintiffs also assert that "[a]s a direct and proximate result of the unconstitutional actions, omissions, customs, polices, practices and procedures of [Sheriff Bigwarfe and Chief Westcott][,]" Timothy Lalonde has suffered numerous serious injuries. Id. ¶ 123. The Court finds that Plaintiffs have alleged facts sufficient to infer that Sheriff Bigwarfe and Chief Westcott "knew, or should have known, that" violent attacks carried out by police officers "posed an excessive risk to health or safety" and that they needed to take corrective action to prevent such attacks. Darnell, 849 F.3d at 29. The Court finds that Sheriff Bigwarfe and Chief Westcott knew

or should have known of this risk "'from the very fact that the risk was obvious.'" <u>Charles</u>, 925

F.3d at 87 (quoting <u>Farmer</u>, 511 U.S. at 842).

Accordingly, Plaintiffs have plausibly stated "a tangible connection between" Sheriff

Bigwarfe and Chief Westcott's "policymaking conduct and the alleged harm," <u>Myers</u>, 2022 U.S.

Dist. LEXIS 134752, at *13, and have plausibly stated "the elements of the underlying claim

directly against each defendant[,]" <u>id.</u> Thus, Plaintiffs have plausibly stated Fourteenth

Amendment failure-to-protect supervisory liability claims against Sheriff Bigwarfe and Chief

Westcott.

Defendants' arguments are phrased in general terms, arguing that Plaintiffs' Complaint

has a "sheer lack of factual allegations[,]" Saint Lawrence Defs.' Mem. of Law at 17, and that

"there is no particularity in the allegations with respect to what policy Chief Wescott is even

alleged to have created or condoned[,]" Ogdensburg Defs.' Mem. of Law at 11. Thus,

Defendants assert generically that Plaintiffs failed to provide factual allegations to plausibly state

a claim, but did not address which specific claims they are contesting. While "a defendant has

the burden of proof on a Rule 12(b)(6) motion[,]" <u>A.S.</u>, 585 F. Supp. 3d at 272, Defendants did

not explain which supervisory claims they were contesting, and as a result the Court finds that

because Plaintiffs have, at a minimum, plausibly stated a Fourteenth Amendment failure-to-

protect supervisory liability claim against Sheriff Bigwarfe and Chief Westcott, Defendants'

general arguments that Plaintiffs have failed to state a supervisory liability claim are insufficient.

Thus, the Court need not address other supervisory liability claims as to Sheriff Bigwarfe and

Chief Westcott brought by Plaintiffs, such as Plaintiffs' Fourteenth Amendment deliberate

medical indifference claims, although the Court would likely arrive at similar conclusions to

those set forth above. <u>See, e.g.</u>, <u>Charles</u>, 925 F.3d at 87 (stating that "the same [deliberate

indifference] standard applies to claims for deliberate indifference to medical needs because 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment" (quoting <u>Darnell</u>, 849 F.3d at 33 n.9).

Accordingly, the Court agrees with the Tenth Circuit's conclusion in <u>Dodds v. Richardson</u>, which the Second Circuit cited approvingly in <u>Tangreti</u>, 983 F.3d at 618:

> Whatever else can be said about <u>Iqbal</u>, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or his subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

<u>Dodds v. Richardson</u>, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983). Thus, Defendants' Motions to Dismiss are denied with regard to Plaintiffs' supervisory claims as to Sheriff Bigwarfe and Chief Westcott.

## F.  Defendants' Arguments as to Plaintiffs' ADA and RA Claims

"As a remedial statute, 'the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" <u>Nat'l Fed'n of the Blind v. Scribd Inc.</u>, 97 F. Supp 3d 565, 573 (D. Vt. 2015) (quoting <u>Mary Jo C. v. New York State and Local Ret. Sys.</u>, 707 F.3d 144, 160 (2d Cir. 2013)).

"Under Title II of the ADA, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.'" <u>Fera v. City of Albany</u>, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008) (Kahn, J.) (quoting 42 U.S.C. §

12132). "Section 504 of the Rehabilitation Act similarly provides in pertinent part that '[n]o otherwise qualified individuals with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." Fera, 568 F. Supp. 2d at 259 (quoting 29 U.S.C. § 794).

"In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). "Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding." Id.

"To recover monetary damages, a plaintiff must demonstrate intentional discrimination." Fera, 568 F. Supp. 2d at 259. "Intentional discrimination does not require personal animosity or ill will[,]" id., and "[a] plaintiff may recover under Title II [of the ADA] or Section 504 upon a showing of a statutory violation resulting from deliberate indifference to the rights secured the disabled by the acts[,]" id. (quotations omitted); see also Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009) (stating that "[t]he standard for intentional violations is deliberate indifference to the strong likelihood of a violation" and that "intentional discrimination against the disabled does not require personal animosity or ill will" (internal quotations omitted)).

Saint Lawrence Defendants argue that "Title II of the ADA does not allow actions against a person in their individual capacity." Saint Lawrence Defs.' Mem. of Law at 19. Ogdensburg

Defendants reiterate the arguments that "co-defendant St. Lawrence County well points out in its brief . . . ." Ogdensburg Defs.' Mem. of Law at 12. Saint Lawrence Defendants contend that "Plaintiffs, as a matter of law, cannot state a claim for relief for violations of the ADA against Officers Merria, nor Sherriff [sic] Bigwarfe[,]" Saint Lawrence Defs.' Mem. of Law at 19, and Ogdensburg Defendants assert that "Plaintiffs cannot legally state a claim for relief under the Americans with Disabilities Act against Chief Robert Westcott, and Officers Charles Shaver, Danielle Pryce, Joshua Sirles and Scott Wilson[,]" Ogdensburg Defs.' Mem. of Law at 12.

The Court agrees with Defendants that, to the extent that Plaintiffs are suing the *individual Defendants* in their *individual capacities*, "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suit . . . ." Fera, 568 F. Supp. 2d at 259 (quotations omitted).

However, Defendants do not address Plaintiffs' suit against Defendants insofar as Plaintiffs are suing Defendants in their *official capacities*. "Sovereign immunity does not . . . extend to local governments or municipalities." Leitner v. Westchester Cmty. College, 779 F.3d 130, 134 (2d Cir. 2015).[9] Therefore, the Court dismisses Plaintiffs' ADA and RA claims with

---

[9] Even if sovereign immunity were at issue, the Court notes that "abrogation [of Eleventh Amendment sovereign immunity] under Title II [of the ADA] is a congruent and proportional response to the history of discrimination against the disabled . . . ." Goonewardena v. New York, 457 F. Supp. 2d 310, 326 (S.D.N.Y. 2007). Because "abrogation under Title II [of the ADA] is a valid exercise of Congressional power under section 5 [of the Fourteenth Amendment], sovereign immunity is not a ground which bars" a plaintiff's claims against the State. Id. Additionally, where "the immunity of the individual defendants sued in their official capacities parallels that of the State[,]" because "sovereign immunity does not shield [the State], it does not shield the individual defendants in their official capacities." Id. at 326–27.

Likewise, even if sovereign immunity were at issue in this case, it would not bar a plaintiff's claims for injunctive relief brought against state actors in their official capacities. "Neither § 504 nor Title II [of the ADA] displays any intent by Congress to bar a suit against state officials in their official capacities for injunctive relief, nor does either create a remedial scheme so elaborate that it could be thought to preclude relief under Ex parte Young[, 209 U.S. 123 (1908)]." Henrietta D., 331 F.3d at 289. Accordingly, "there is no basis for holding that the

regard to Merria, Sheriff Bigwarfe, Shaver, Pryce, Sirles, Wilson, and Chief Westcott to the extent that as Plaintiffs are suing these individual Defendants in their individual capacities. However, Plaintiffs' claims may proceed under the ADA and RA insofar as Plaintiffs are brining claims against Merria, Sheriff Bigwarfe, Shaver, Pryce, Sirles, Wilson, and Chief Westcott in their official capacities.

Saint Lawrence Defendants and Ogdensburg Defendants "do[] not argue that Plaintiff [Timothy Lalonde] is not a qualified individual with a disability or that [they] are not a public entity." Fera, 568 F. Supp. 2d at 259; see also Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (stating that under the ADA "[a] local police department falls 'squarely within the statutory definition of public entity'" (quotations omitted) (quoting Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998)).

Saint Lawrence Defendants argue that Plaintiffs must allege "allege facts showing that a policy maker acted with ill will or personal animosity toward him because of his disability" to satisfy deliberate indifference under Title II of the ADA. Saint Lawrence Defs.' Mem. of Law at 22 (quoting Vassenelli v. State Univ. of N.Y., No. 17-CV-00082, 2018 U.S. Dist. LEXIS 44200, at *8 (N.D.N.Y. Mar. 19, 2018)). Ogdensburg Defendants offer a similar argument and also cite to Vassenelli. Ogdensburg Defs.' Mem. of Law at 14.

The Court first addresses the standard discussed in Vassenelli. When stating the standard under Title II of the ADA, Vassenelli stated: "To prove intentional discrimination under Title II, a plaintiff must allege facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policy maker acted with deliberate indifference to

_____

ADA or Rehabilitation Act intended to create the kind of comprehensive enforcement scheme that would preclude prospective injunctive relief against a state official in her official capacity.").

his rights under the ADA." 2018 U.S. Dist. LEXIS 44200, at *8 (quotations omitted). The urtext for this principle is Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 115 (2d Cir. 2001), which Vassenelli cited to when setting forth the aforementioned standard, see 2018 U.S. Dist. LEXIS 44200, at *8. However, immediately after citing to Garcia, Vassenelli then stated that "[d]eliberate indifference does not require personal animosity or ill will." Id. at *8 (citing Loeffler, 582 F.3d at 275). Clearly, these two standards are at odds—it would require the plaintiff to plead that a policymaker acted with ill will or personal animosity while at the same time it would not require personal animosity or ill will. This contradiction can be resolved, however, because the Garcia standard no longer governs Title II ADA suits.

The Second Circuit case Bartlett v. New York State Bd. of Law Exm'rs set forth the standard for intentional discrimination under the RA, although Bartlett appeared to treat the ADA and RA interchangeably: "In the context of the Rehabilitation Act, intentional discrimination against the disabled does not require personal animosity or ill will." 156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds by 527 U.S. 1031 (1999). However, Garcia argued that deliberate indifference under the ADA was a different standard than under the RA. Garcia stated that "[i]n enacting Title II [of the ADA], Congress purported to rely on its authority under both the Commerce Clause of Article I and § 5 of the Fourteenth Amendment." 280 F.3d at 108. Garcia argued that "Title II in its entirety exceeds Congress's authority under § 5 [of the Fourteenth Amendment]" but said that "Title II need only comport with Congress's § 5 authority to the extent that the title allows private damage suits against states for violations." Id. at 110. Garcia asserted: "The question, therefore, is how Title II monetary claims against the states can be limited so as to comport with Congress's § 5 authority. The answer, we believe, is to require plaintiffs bringing such suits to establish that the Title II violation was motivated by

discriminatory animus or ill will based on the plaintiffs' disability." Id. at 111. Garcia argued that "unlike Title II of the ADA, § 504 [of the RA] was enacted pursuant to Congress's authority under the Spending Clause of Article I." Id. at 113 (citing U.S. Const. art. I, § 8, cl. 1). Because of this purported difference, Garcia stated that it "alter[ed] that holding [in Bartlett] by requiring proof of discriminatory animus or ill will for Title II damage claims brought against states . . . ." Id. at 115.

However, subsequently the Supreme Court issued Tennessee v. Lane, 541 U.S. 509 (2004) and United States v. Georgia, 546 U.S. 151 (2006), and "[i]t [became] far from clear whether the discriminatory animus requirement [set forth in Garcia] remains in place following the Supreme Court's decisions in Lane and Georgia." Goonewardena, 475 F. Supp. 2d at 324 n.2. As discussed above in note 7, courts have "concluded that abrogation [of Eleventh Amendment sovereign immunity] under Title II [of the ADA] is a valid exercise of Congressional power under section 5 [of the Fourteenth Amendment] . . . ." Id. at 327; see also Ali v. Hogan, No. 12-CV-0104, 2013 U.S. Dist. LEXIS 141239, at *30 (N.D.N.Y. Sept. 11, 2013) (adopting the approach taken in Goonewardena), report and recommendation adopted by 2013 U.S. Dist. LEXIS 142001 (N.D.N.Y. Sept. 30, 2013). Accordingly, in light of Lane and Georgia's displacement of Garcia's finding as to § 5 of the Fourteenth Amendment, it appears that Garcia's discriminatory animus requirement no longer governs Title II actions brought under the ADA, which this Court has made clear: "Intentional discrimination [under Title II of the ADA and under the RA] does not require personal animosity or ill will." Fera, 568 F. Supp. 2d at 259. To find otherwise would run counter to the well-settled principle that "[a]s a remedial statute, 'the ADA must be broadly construed to effectuate its purpose of providing a clear and

comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Scribd, 97 F. Supp 3d at 573 (quoting Mary Jo C., 707 F.3d at 160).

Accordingly, to plead intentional discrimination under the RA and Title II of the ADA, Plaintiffs must demonstrate deliberate indifference, which does not require personal animosity or ill will. See Fera, 568 F. Supp. 2d at 259. Therefore, the Court finds that Defendants err in arguing that a plaintiff needs to plead animosity or ill will in the context of a Title II claim under the ADA.

In addition, Saint Lawrence Defendants argue that "Plaintiffs' Complaint does not plead facts sufficient to infer that the [Saint Lawrence] County Defendants were directly or vicariously involved in any alleged discrimination, nor that Plaintiff was discriminated against because of his disability." Saint Lawrence Defs.' Mem. of Law at 20. Similarly, Ogdensburg Defendants contend that "Plaintiffs do not plead facts sufficient to infer that the City of Ogdensburg or its officers were involved in any alleged discrimination or that Mr. Lalonde was discriminated against because of his disability." Ogdensburg Defs.' Mem. of Law at 12.

"[I]ntentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom." Bartlett, 156 F.3d 331 (quotations omitted). Furthermore, it is well-settled that vicarious liability principles apply under the ADA. See Morales v. City of New York, No. 13-CV-7667, 2016 U.S. Dist. LEXIS 121471, at *22 (S.D.N.Y. Sept. 7, 2016) ("[T]he law is clear that municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the Rehabilitation Act committed by their agents."); Bowen v. Rubin, 385 F. Supp. 2d 168, 180 (E.D.N.Y. 2005) (stating that "[g]eneral common law agency principles apply to the ADA" and finding at the

summary judgment stage that "applying the principles of vicarious liability, the plaintiffs have demonstrated a genuine issue of material fact as to whether the . . . defendants may be held liable under the ADA and the Rehabilitation Act").

Here, Plaintiffs plead that it was "readily apparent that [Timothy Lalonde] was blind and sightless[,]" Compl. ¶ 26, because Timothy Lalonde was "holding a cane wearing dark sunglasses" in the middle of the night when Defendant officers were present, id. ¶ 25. In addition, Plaintiffs aver that after Timothy Lalonde was "slammed" onto the ground by Defendant officers, id. ¶ 28, Theresa Lalonde "scream[ed] to the Defendant Officers that "her husband is blind . . . ." Id. ¶ 29. Furthermore, as Merria "was yanking upon [Timothy Lalonde's] left arm ordering him to release it from under the weight of his body [Timothy Lalonde] responded that he couldn't do it as he was disabled." Id. ¶ 31.[10] Timothy Lalonde "screamed that he was unable to comply with the [Defendant officers'] commands to move his body in order to free up his immobilized arm." Id. ¶ 33. Defendant officers then "inflicted two taser shots" on Timothy Lalonde, id. ¶ 34, "ruthlessly ignor[ed Timothy Lalonde's] assertion that his disability prevented him from moving" and instead "aggressively yank[ed Timothy Lalonde's] left wrist, elbow and arm resulting in an audible 'pop' that left [him] numb with excruciating pain and a shattered broken wrist, fractured and dislocated elbow, and torn rotator cuff[,]" id. ¶ 35, and because of Timothy Lalonde's "lack[] [of] stomach and back muscles to keep him upright when shackled with handcuffs behind his back" the Defendant officers "'improvised' by lifting [his]

---

[10] Saint Lawrence Defendants regard Plaintiffs' factual claims as to this incident as inconsistent, Saint Lawrence Defs.' Mem. of Law at 20, but the Court reiterates what it stated above—under Rule 8, a plaintiff's pleadings may have inconsistencies and "[t]he inconsistency may lie either in the statement of the facts or in the legal theories adopted . . . ." Henry, 42 F.3d at 95.

body and throwing him laterally into the patrol car sending his head crashing against the opposite passenger door[,]" id. ¶ 37.

Thereafter, Defendant officers "intentionally and mockingly refused to accommodate [Timothy Lalonde's] disability when they ushered him into the police department to complete his arrest processing[,]" id. ¶ 41, Doe Officers and Chief Westcott "persisted in ridiculing and refusing to accommodate [Timothy Lalonde] by requiring him to stand facing the wall with his hands stretched out touching the wall while they interrogated and booked him[,]" id. ¶ 42, and compelled Timothy Lalonde "to stand against the stationhouse for one hour while [the officers] attempted to have [Timothy Lalonde] subscribe and 'confess' to their fabrications[,]" id. ¶ 45. Based on these numerous factual allegations, the Court finds that "intentional discrimination may be inferred" here because Plaintiffs' allegations plausibly show that Defendants "acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights w[ould] result" under the ADA and RA from Defendants' actions. Bartlett, 156 F.3d at 331.[11]

Finally, Saint Lawrence Defendants argue that the Second Circuit case Tardif v. City of New York, 991 F.3d 394 (2d Cir. 2021), as interpreted by a different court in this District in Butchino v. City of Plattsburgh, No. 20-CV-796, 2022 U.S. Dist. LEXIS 7995 (N.D.N.Y. Jan. 14, 2022), precludes Plaintiffs' ADA claims as they relate to excessive force. Saint Lawrence Defs.' Mem. of Law at 20–22. Ogdensburg Defendants reiterate Saint Lawrence Defendants' argument. Ogdensburg Defs.' Mem. of Law at 13.

---

[11] Insofar as Ogdensburg Defendants assert that "no facts have been alleged that [Chief Westcott] was a 'policy maker,'" Ogdensburg Defs.' Mem. of Law at 14, the Court finds that this argument is inapposite. See Wilson v. Robert Riley Baucom, No. 20-CV-311, 2021 U.S. Dist. LEXIS 253806, at *25 (W.D. Tex. Jan. 25, 2021) ("Neither a policymaker nor an official policy need be identified for ADA claims; a public entity 'is liable for the vicarious acts of any of its employees as specifically provided by the ADA.'" (quoting Leeper v. Travis Cnty., No. 16-CV-819, 2018 U.S. Dist. LEXIS 191755, at * (W.D. Tex. Nov. 19, 2018))).

As <u>Butchino</u> explained the reasoning of <u>Tardif</u>:

> In <u>Tardif</u>, the plaintiff, a pre-arraignment detainee, was on a strict medication schedule for epilepsy and informed an officer of her medical needs. Although the plaintiff received her first dose, she did not receive her second dose, had a seizure, and was transported to the hospital. The Second Circuit held that Tardif's epilepsy did not cause a deprivation of medical services, it was just the motivation for seeking out such services.

<u>Butchino</u>, 2022 U.S. Dist. LEXIS 7995, at *32 (citations omitted). <u>Tardif</u> based this holding on the principle that "'[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability.'" <u>Id.</u> (quoting <u>Tardif</u>, 991 F.3d at 406).

Based on the principle that the ADA prohibits discrimination because of disability but not inadequate treatment for disability, <u>Butchino</u> states: "<u>Tardif</u> would preclude an ADA claim for excessive force itself, not the failure to provide a reasonable accommodation," <u>Butchino</u>, 2022 U.S. Dist. LEXIS 7995, at *32. <u>Butchino</u> asserted that a reasonable accommodation in an excessive force situation could include "a cooling off period[,]" <u>id.</u>, and stated that "[t]he failure to provide such a reasonable accommodation is squarely cognizable under the ADA[,]" <u>id.</u> at *32–33. Thus, <u>Butchino</u> found that a plaintiff could bring an ADA claim based on failure to provide a reasonable accommodation in the context of an excessive force situation. As <u>Butchino</u> explains: "Whereas the failure to provide medical care is a generalized issue that applies beyond the ambit of disability law, the failure to provide reasonable accommodation to a service or benefit—a cooling off period for an individual with PTSD—is a quintessential failure to accommodate disability claim." <u>Id.</u> at 33. Accordingly, the Court finds that Defendants' arguments as to <u>Butchino</u> and <u>Tardif</u> are misplaced. <u>Butchino</u> actually demonstrates that a plaintiff can bring an ADA claim in the context of an excessive force situation, as long as that situation involved discrimination because of disability.

Moreover, <u>Butchino</u> does not definitively foreclose an ADA claim predicated on excessive force, but instead merely states: "Plaintiff does not bring an ADA claim to remain free from excessive force, which would *likely* fail following <u>Tardif</u>." <u>Id.</u> (emphasis added). As the Second Circuit in <u>Tardif</u> stated: "[W]here an individual challenges 'the substance of the services provided'—rather than 'illegal discrimination'—there is no ADA violation." <u>Tardif</u>, 991 F.3d at 405 (quoting <u>Doe v. Pfrommer</u>, 148 F.3d 73, 84 (2d Cir. 1998)). Thus, neither <u>Butchino</u> nor <u>Tardif</u> foreclose an excessive force claim pursuant to the ADA that is predicated on illegal discrimination based on disability.

However, the Court need not address this question because Plaintiffs argue: "Defendants are misguided in their assertion that Mr. Lalonde's ADA claim is simply founded on his belief that the entirety of his claim relies upon a theory that he has a right to a reasonable accommodation to be free from excessive force." Pls.' Resp. to Saint Lawrence Defs.' at 20. Saint Lawrence Defendants asserted: "Plaintiffs argument is that because Mr. Lalonde is blind, he should never have been subjected to force." Saint Lawrence Defs.' Mem. of Law at 22. Ogdensburg Defendants reiterate this argument, stating that Plaintiffs argue "[i]n essence because he is blind, Mr. Lalonde should not be subjected to force." Ogdensburg Defs.' Mem. of Law at 13. Plaintiffs argue that, instead, that they are arguing that Defendants failed to reasonably accommodate Timothy Lalonde's disabilities throughout his encounter with Saint Lawrence County and City of Ogdensburg law enforcement officials. For example, Plaintiffs assert: "Defendant officers should have considered Mr. Lalonde's sight impairment, i.e., accommodated for it by engaging in a verbal exchange to assess the necessity of having to assume a tactical arrest formation." Pls.' Resp. to Saint Lawrence Defs.' at 21. Additionally, Plaintiffs argue that "Defendant Officers . . . intentionally refused to accommodate Mr.

Lalonde's physical disability which prevented him from sitting upright in the back of Defendants' squad car." Id. at 22.

Plaintiffs' reasonable accommodation claims are precisely the types of ADA claims courts in this Circuit have found are cognizable. See Williams v. City of New York, 121 F.3d 354, 368 (S.D.N.Y. 2015) (stating that when law enforcement officials carry out on-the-street interactions, "the only reasonable interpretation of Title II [of the ADA] is that law enforcement officers who are acting in an investigative or custodial capacity are performing services, programs, or activities within the scope of Title II" (quotations omitted)); Nicholas v. City of Binghamton, No. 10-CV-1565, 2012 U.S. Dist. LEXIS 111736, at *34 (N.D.N.Y. Aug. 7, 2012) ("An arrest or seizure of an individual, including post arrest transportation and investigation is a service, activity, or benefit of a police department and is thus covered under the ADA." (quotations omitted)); cf. Ryan v. Vt. State Police, 667 F. Supp. 2d 378 (D. Vt. 2009) ("The ADA requires police officers to take appropriate steps to ensure that communication between deaf arrestees, and the police is at least as effective as communication that would occur between the police and hearing arrestees.").

Because Defendants' arguments as to Butchino and Tardif are misplaced, and because Plaintiffs' ADA claims based on Defendants' failure to provide reasonable accommodations are the types of ADA claims courts regularly permit, the Court finds that Defendants have not met their burden. Therefore, Defendants' Motions to Dismiss are denied with regard to Plaintiffs' ADA claims,[12] insofar as Plaintiffs are not suing individual Defendants in their individual capacities.

---

[12] To the extent that Saint Lawrence Defendants again reiterate their argument as to inconsistencies in Plaintiffs' Complaint, in the context of these ADA claims, Saint Lawrence

### G.  Defendants' Arguments as to Plaintiffs' State Law Claims for Negligent Infliction of Emotional Distress

Under New York State law the New York State Court of Appeals has

> h[e]ld that where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in the consequence of the observation of the serious injury or death of a member of his or her immediate family— assuming . . . that it is established that the defendants' conduct was a substantial factor in bringing about such injury or death.

Bovsun v. Sanperi, 61 N.Y.2d 219, 231 (N.Y. 1984). This is governed by the "zone-of-danger rule, which allows one who is himself or herself threatened with bodily harm in consequence of the defendant's negligence to recover for emotional distress resulting from the viewing of the death or serious physical injury of a member of his or her immediate family . . . ." Id. at 228. Moreover, "the emotional disturbance suffered must be serious and verifiable." Id. at 231 (citation omitted). "Additionally, the compensable emotional distress must be tied, as a matter of proximate causation, to the observation of the serious injury or death of the family member and such injury or death must have been caused by the conduct of the defendant." Id. at 231–32.

Here, Saint Lawrence Defendants assert that "Plaintiffs have failed to even make a conclusory allegation that [Theresa] Lalonde's physical safety was threatened or endangered, and there are no facts to suggest that Mrs. Lalonde was in any way part of her husband's interaction with the officers . . . ." Saint Lawrence Defs.' Mem. of Law at 23. Likewise, the Ogdensburg Defendants argue: "There are no facts alleged suggesting that Mrs. Lalonde was in any way part of her husband's interaction with the officers such that she feared for her own safety." Ogdensburg Defs.' Mem. of Law at 14.

---

Defs.' Mem. of Law at 22, the Court again finds that Plaintiffs may plead in the alternative under Rule 8.

Plaintiffs averred in the Complaint that Theresa Lalonde "stormed out of her house" to accost the Defendant Officers for attacking her husband, Compl. ¶ 29, and Plaintiffs argue that "Theresa Lalonde was in the immediate vicinity as her husband[,]" Pls.' Resp. to Saint Lawrence Defs.' at 24, and that "there is more than reasonable chance that she herself would have been physically accosted and threatened with a similar beating as her husband[,]" id.

"Whether a plaintiff was in the 'zone of danger,' . . . may raise factual questions that must be resolved by a jury." Sullivan v. Ford Motor Co., No. 97-CV-0593, 2000 U.S. Dist. LEXIS 4114, at *24 (S.D.N.Y. Mar. 31, 2000) (citing Leverock v. Hall & Fuhs, Inc., 245 A.D.2d 550, 551 (N.Y. App. Div. 1997) and Malstrom v. Mackey, 182 A.D.2d 1006, 1006–07 (N.Y. App. Div. 1992)). "[D]rawing all reasonable inferences in the plaintiffs' favor[,]" Holmes, 568 F.3d at 335 (citation omitted), and noting that the zone of danger analysis is a factual matter better suited to later stages in the litigation when such facts have been more fully developed, the Court finds that Plaintiffs have plausibly pled Theresa Lalonde's presence in the zone of danger as to their negligent infliction of emotional distress claims. Accordingly, because Defendants argue only that "Plaintiffs failed to plead one element of this cause of action," Saint Lawrence Defs.' Mem. of Law at 24; see also Ogdensburg Defs.' Mem. of Law at 14, the Court finds that Defendants have not met their burden under Rule 12(b)(6), and Defendants' Motions to Dismiss are denied as to Plaintiffs' negligent infliction of emotional distress claims.

### H.  Defendants' Arguments as to Plaintiffs' State Law Claims for Intentional Infliction of Emotional Distress

Saint Lawrence Defendants and Ogdensburg Defendants contend that Plaintiffs' state law claim for intentional infliction of emotional distress is time barred by the relevant statute of limitations. Saint Lawrence Defs.' Mem. of Law at 24; Ogdensburg Defs.' Mem. of Law at 15.

While "[i]n section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions,'" which is "three years" under New York State law, <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 79 (2d Cir. 2002) (quoting <u>Owens v. Okure</u>, 488 U.S. 235, 249–50 (1989)), Plaintiffs' state law claims for intentional infliction of emotional distress may be governed by either New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 215 or New York General Municipal Law § 50-i, <u>see</u> <u>Durr</u>, 588 F. Supp. 3d at 37. Under N.Y. C.P.L.R. § 215, "an action against a sheriff . . . or constable, upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty . . ." "shall be commenced within one year . . . ." N.Y. C.P.L.R. § 215(1). Under New York General Municipal Law § 50-i:

> No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such city, county, village, fire district or school district of any officer, agent or employee thereof . . . unless (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

N.Y. Gen. Mun. § 50-i(c). "Whether the statute of limitations outlined in [N.Y.] GML § 50-i(c) or NY CPLR § 215 applies 'depends upon who is the real party in interest.'" <u>Durr</u>, 588 F. Supp. 3d at 37 (quoting <u>Coe v. Town of Conklin</u>, 94 A.D.3d 1197, 1198 (N.Y. App. Div. 2012)). "Where an individual 'was acting solely on his own behalf' NY CPLR § 215 applies." <u>Durr</u>, 588 F. Supp. 3d at 37 (quoting <u>Coe</u>, 94 A.D.3d at 1198). "Where an individual is alleged to have been 'acting within the scope of his employment with the Town, however, the Town may be liable for his conduct and would thus be the real party in interest; in those circumstances, General Municipal Law § 50-i(c) would apply.'" <u>Durr</u>, 588 F. Supp. 3d at 37–38 (quoting <u>Coe</u>, 94 A.D.3d at 1198–99).

Defendants appear to assume that N.Y. C.P.L.R. § 215(1) applies to this case, rather than N.Y. Gen. Mun. § 50-i(c), although they do not explain why this is the case or address who is the real party in interest under New York State law. Saint Lawrence Defs.' Mem. of Law at 24; Ogdensburg Defs.' Mem. of Law at 15.

"It is well established that '[c]omplaints need not anticipate, or attempt to plead around, potential affirmative defenses.'" Kattu v. Metro Petroleum, Inc., No. 12-CV-54, 2013 U.S. Dist. LEXIS 110413, at *10 (W.D.N.Y. Aug. 6, 2013) (quoting High Falls Brewing Co., LLC v. Boston Beer Corp., 852 F. Supp. 2d 306, 310 (W.D.N.Y. 2011)). "Accordingly, 'a statute of limitations is an affirmative defense that need not be addressed in the complaint,' and plaintiffs are not required to allege facts in their complaint to rebut a potential statute of limitations affirmative defense that might be waived." Kattu, 2013 U.S. Dist. LEXIS 110413, at *11 (quoting E.E.O.C. v. Davis, No. 07-CV-6434, 2008 U.S. Dist. LEXIS 72911, at *18 (W.D.N.Y. Sept. 24, 2008)). "Requiring plaintiffs to allege in a complaint facts sufficient to overcome a statute of limitations affirmative defense would shift the burden to raise and prove the affirmative defense from defendants, as their burden is allocated and imposed by Rule 8(c)(1) of the Federal Rules of Civil Procedure, to plaintiffs." Kattu, 2013 U.S. Dist. LEXIS 110413, at *11.

"Determining a statute of limitations defense ordinarily 'requires a consideration of the merit of both parties' claims and defenses.'" Id. at *12 (quoting Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 83 (E.D.N.Y. 2011)). "A 'motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense' except in the 'rare' circumstance in which facts sufficient to rule on the affirmative defense are alleged in the complaint." Acosta v. Jardon & Howard Techs., Inc., No. 18-CV-16, 2018 U.S. Dist.

LEXIS 187927, at *4 (E.D.N.Y. Nov. 2, 2018) (quoting <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)); <u>Kattu</u>, 2013 U.S. Dist. LEXIS 110413, at *12 ("Because the [statute of limitations] defense requires consideration on the merits, it is heavily fact dependent, which makes a statute of limitations '[d]ismissal under Rule 12(b)(6) . . . irregular.'" (quoting <u>Davis</u>, 2008 U.S. Dist. LEXIS 72911, at *18)).

Plaintiffs argue that the statute of limitations defense does not apply here because of the "continuing violation doctrine . . . ." Pls.' Resp. to Saint Lawrence Defs.' at 25. Plaintiffs assert that "that Defendant Merria, Shaver, Pryce, and Sirles engaged in a conspiracy" and allege that the "co-conspirator[s] and co-Defendants[] Chief Robert Westcott and Ogdensburg police officer Scott Wilson . . . on or about April 1, 2021, resuscitated the conspiracy's false narratives in order to bolster their conspiracy's coverup" by "order[ing Timothy] Lalonde, under threat of warrant, to return to the [Ogdensburg Police Department] stationhouse to purportedly retake fingerprints and mugshots despite his criminal case being dismissed in July 21, 2020." <u>Id.</u> During this time, Plaintiffs state that "co-conspirators Westcott and Wilson proceeded to re-interrogate Mr. Lalonde regarding their fantastical fabricated narrative . . . . ." <u>Id.</u>

Under New York State law, the New York State Supreme Court, Appellate Division, First Department, has found that based on "a pattern of harassment, intimidation, humiliation and abuse" an "intentional infliction of emotional distress" action "was not barred by the one-year Statute of Limitations (CPLR 215)" and "was instead governed by the continuing tort doctrine" which "permit[s] the plaintiff to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit." <u>Shannon v. MTA Metro-North R.R.</u>, 269 A.D.2d 218, 219 (N.Y. App. Div. 2000). Accordingly, under Plaintiffs' argument, the statute of limitations did not commence until on or

about April 1, 2021, and therefore, Plaintiffs' filing of the Complaint on February 18, 2022, was well within the statute of limitations time period set forth by N.Y. C.P.L.R. § 215(1) or N.Y. Gen. Mun. § 50-i(c). See generally Compl.

Thus, for the purposes of resolving Defendants' Motions to Dismiss, the Court finds that Plaintiffs' intentional infliction of emotional distress claims are not time barred by the statute of limitations, and the Court will not shift the burden of pleading and proving facts that underpin the potential statute of limitations defense from Defendants onto Plaintiffs. Cf. Kattu, 2013 U.S. Dist. LEXIS 110413, at *13–14 ("In this action, some of plaintiffs' claims may have accrued before the two- or three-year statute of limitations bar date, but plaintiffs sufficiently raise equitable tolling in response to defendant['s] . . . Rule 12(b)(6) motion to dismiss to avoid the dismissal of their claims for failure to state a claim. In light of plaintiff[s'] response to the motion to dismiss, it is not clear from the complaint that any of plaintiffs' claims are time-barred. On the other hand, undisputed facts may later justify a motion for summary judgment to significantly narrow the issue for trial. At this juncture, the Court will not shift the burden of pleading and proving facts that underlie the potential statute of limitations defense, a defense that is waived if not alleged in an answer, from defendant to plaintiffs."). Accordingly, Defendants' Motions to Dismiss are denied as to Plaintiffs' intentional infliction of emotional distress claims.

## I. Defendants' Arguments as to Plaintiffs' Negligence Claims

Saint Lawrence Defendants and Ogdensburg Defendants both argue that because conduct cannot be both negligent and intentional, the Court should dismiss Plaintiffs' negligence claims. Saint Lawrence Defs.' Mem. of Law at 24–25; Ogdensburg Defs.' Mem. of Law at 15. As discussed at length above, it is well-settled that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Accordingly, the Court

finds that Defendants' arguments with regard to inconsistency of pleadings are inapposite under Rule 8.

Saint Lawrence Defendants assert that "Plaintiffs' negligence claim must also be dismissed because plaintiffs may not recover in negligence where a law enforcement officer fails to exercise some requisite amount of care in effectuating an arrest or initiating a prosecution." Saint Lawrence Defs.' Mem. of Law at 25. Ogdensburg Defendants reiterate the same argument: "[N]egligence claims must be dismissed where it is alleged that the law enforcement officer was negligent by failing to exercise certain care in effectuating the arrest or initiating prosecution." Ogdensburg Defs.' Mem. of Law at 15. Both groups of Defendants cite to the Second Circuit decision Bernard v. United States, which stated: "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effectuating an arrest or initiating a prosecution." 25 F.3d 98, 102 (2d. Cir. 1994); Saint Lawrence Defs.' Mem. of Law at 25; Ogdensburg Defs.' Mem. of Law at 15.

Bernard relies on Boose v. City of Rochester, 71 A.D. 59 (N.Y. App. Div. 1979), a decision issued by the New York State Supreme Court, Appellate Division, Fourth Department, in support of its finding. See Bernard, 25 F.3d at 102. Boose stated: "Plaintiff may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution." 71 A.D. at 62. However, a plaintiff may proceed with negligence claims brought against law enforcement officials if such claims are not duplicative of false arrest, false imprisonment, or malicious prosecution. See Woods v. Town of Cheektowaga, No. 11-CV-343, 2012 U.S. Dist. LEXIS 152229, at *22–23 (W.D.N.Y. Oct. 23, 2012) (addressing "Defendants['] argume[ment] that this claim [for

negligence] must be dismissed because the negligence alleged is based upon activities relating to an arrest, [and] therefore Plaintiffs must resort to the traditional remedies of false imprisonment and malicious prosecution and cannot recover under the broader principles of negligence" but finding that "[u]nlike the cases on which Defendants rely, however, Plaintiffs' negligence claim here is not duplicative of a false arrest or malicious prosecution claim" (citations omitted) (quotations omitted)).

Accordingly, the Court agrees with Defendants that Plaintiffs may not pursue negligence claims against Pryce, Sirles, Shaver, Wilson, Merria, and Chief Westcott for actions and omissions that are properly construed as false arrest and false imprisonment claims. Therefore, these claims are dismissed. However, insofar as Plaintiffs seek to bring other negligence claims that are not duplicative of false arrest and false imprisonment, those claims may proceed because Defendants have not met their burden with regard to those other negligence claims. Thus, Defendants' Motions to Dismiss are denied as to Plaintiffs' negligence claims that are not duplicative of false arrest and false imprisonment.

### J.  Ogdensburg Defendants' Arguments as to Plaintiffs' Trespass Claim Against Wilson

Ogdensburg Defendants argues that the Court should dismiss Plaintiffs' trespass claim against Wilson. Ogdensburg Defs.' Mem. of Law at 16–17. Ogdensburg Defendants contend that two New York State Court of Appeals cases support their argument, specifically Valdez v. City of New York, 18 N.Y.3d 69 (N.Y. 2011), and McLean v. City of New York, 12 N.Y.3d 194 (N.Y. 2009). Ogdensburg Defs.' Mem. of Law at 16. However, the two cases that Ogdensburg Defendants cite address *municipal liability* whereas Plaintiffs' Complaint seeks to bring a trespass claim only against Wilson. Compl. ¶¶ 171–76. For example, the passage of Valdez quoted by Ogdensburg Defendants states: "'A public employee's discretionary acts—meaning

conduct involving the exercise of a reasoned judgment—may not result in the *municipality's liability* even when the conduct is negligent.'" Ogdensburg Defs.' Mem. of Law at 16 (emphasis added) (quoting <u>Valdez</u>, 18 N.Y.3d at 76). Likewise, <u>McLean</u> states that "discretionary *municipal acts* may never be a basis for liability, while ministerial acts may support liability only where a special duty is found." <u>McLean v. City of New York</u>, 12 N.Y.3d at 202. Thus, the <u>Valdez</u> and <u>McLean</u> cases are inapplicable in the context of Plaintiffs' trespass claim against Wilson. Accordingly, Ogdensburg Defendants have failed to meet their burden of proving that Plaintiffs have not stated a cognizable claim against Wilson for trespass, and Ogdensburg Defendants' Motion to Dismiss is denied with regard to Plaintiffs' trespass claim against Wilson.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Saint Lawrence Defendants' Motion to Dismiss (Dkt. No. 9) is **GRANTED in part**, pursuant to Rule 12(b)(6), to the extent that Plaintiffs are seeking to sue individual Defendants in their individual capacities under the ADA; however, Saint Lawrence Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other ADA claims against Defendants—including those claims brought against Defendants in their official capacities—and Plaintiffs' other ADA claims may proceed; and it is further

**ORDERED**, that Saint Lawrence Defendants' Motion to Dismiss is **GRANTED in part**, pursuant to pursuant to Rule 12(b)(6), insofar as Plaintiffs are seeking to sue Defendants for negligence for acts or omissions that are properly construed as false arrest and false imprisonment; however, Saint Lawrence Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other negligence claims that are not duplicative of false arrest and false imprisonment, and Plaintiffs' other negligence claims are permitted to proceed; and it is further

**ORDERED**, that Saint Lawrence Defendants' Motion to Dismiss is **DENIED** as to all other claims Saint Lawrence Defendants seek to dismiss; and it is further

**ORDERED**, that Ogdensburg Defendants' Motion to Dismiss (Dkt. No. 10) is **GRANTED in part**, pursuant to Rule 12(b)(6), to the extent that Plaintiffs are seeking to sue individual Defendants in their individual capacities under the ADA; however, Ogdensburg Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other ADA claims against Defendants—including those claims brought against Defendants in their official capacities—and Plaintiffs' other ADA claims may proceed; and it is further

**ORDERED**, that Ogdensburg Defendants' Motion to Dismiss is **GRANTED in part**, pursuant to pursuant to Rule 12(b)(6), insofar as Plaintiffs are seeking to sue Defendants for negligence for acts or omissions that are properly construed as false arrest and false imprisonment; however, Ogdensburg Defendants' Motion to Dismiss is **DENIED** with regard to all of Plaintiffs' other negligence claims that are not duplicative of false arrest and false imprisonment, and Plaintiffs' other negligence claims are permitted to proceed; and it is further

**ORDERED**, that Ogdensburg Defendants' Motion to Dismiss is **DENIED** as to all other claims Ogdensburg Defendants seek to dismiss; and it is further

**ORDERED**, that the Clerk of the Court is respectfully directed to serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     March 16, 2023
           Albany, New York

LAWRENCE E. KAHN
United States District Judge