UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TIMOTHY LALONDE AND THERESA LALONDE,

Plaintiffs,

-against-                                                    8:22-CV-00164 (LEK/DJS)

CITY OF OGDENSBURG, *et al.*,

Defendants.

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On February 18, 2022, Plaintiffs Timothy Lalonde and Theresa Lalonde commenced this

action by filing a complaint asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986, the

Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), as well as New York state

law. *See generally* Dkt. No. 1 ("Complaint"). The Complaint named as Defendants the City of

Ogendsburg, Saint Lawrence County, the City of Ogdesnburg Police Department, the Saint

Lawrence County Sheriffs' Department, Ogdensburg Police Department Chief Robert Wescott,

the County of Saint Lawrence Sheriff Brooks Bigwarfe, Sheriff Matthew Merria, and Police

Officers Charles Shaver, Danielle Pryce, Joshua Sirles, and Scott Wilson. *Id.* at 1.

On February 4, 2025, Defendants Saint Lawrence County Sheriffs Department, Brooks

Bigwarfe and Matthew Merria ("County Defendants and Merria") filed a motion for judgment on

the pleadings. Dkt. No. 73 ("Motion"). On September 29, 2025, the Court issued a

Memorandum-Decision and Order, granting County Defendants and Merria's Motion in its

entirety, dismissing Plaintiffs' state law claims against Deputy Merria and Section 1986 claims

against the County Defendants as untimely. Dkt. No. 117 ("MDO"). On October 13, 2025,

Plaintiffs filed a motion for reconsideration. Dkt. No. 121. ("Motion for Reconsideration"). On March 31, 2026, the Court ruled against the Motion for Reconsideration. Dkt. No. 124 ("Reconsideration").

On May 29, 2025, Defendant Matthew Merria filed a Motion for Summary Judgment. Dkt. No. 90 ("Merria MSJ"). Also on May 29, 2025, County Defendants filed a Motion for Summary Judgment. Dkt. No. 92 ("County MSJ"). That same day, the City of Ogdensburg, the City of Ogdensburg Police Department, Danielle Pryce, Charles Shaver, Joshua Sirles, Robert Wescott, and Scott Wilson (City Defendants) filed a Motion for Summary Judgment. Dkt. No. 94 ("City MSJ"). On July 28, 2025, Plaintiffs filed a response to County Defendants, Dkt. No. 103 ("Resp. to County"), to Defendant Merria, Dkt. No. 104 ("Resp. to Merria"), and City Defendants, Dkt. No. 105 ("Resp. to City"). On September 26, 2025, County Defendants, Dkt. No. 114 ("County Reply), and Defendant Merria, Dkt. No. 113 ("Merria Reply"), filed replies. On September 29, 2025, City Defendants also filed a reply. Dkt. No. 118 ("City Reply").

## II.   BACKGROUND

The factual summary of the relevant events are taken from the parties' statement of material facts and the attached exhibits.[1] Disputes of material fact in the record are noted.

---

[1] City Defendants move to strike Plaintiffs' Statement of Material Facts. Dkt. No. 118 at 2 fn. 1 ("City Resp. Pl. SMF"). County Defendants and Defendant Merria, similarly object to the Plaintiffs' Statement of Material Facts. Dkt. No. 114 1–2 ("County Resp. Pl. SMF"); Dkt. No. 113 at 1–2 ("Merria Resp. Pl. SMF"). Plaintiffs, conversely, move to strike City Defendants' Statement of Material Fact. Dkt. No. 105-2 at 1–2 ("Pl. Resp. City SMF") at 1–2.
   Defendants are correct that Plaintiffs' document is not "short and concise" and is not limited to "assertions that are 'in dispute.'" County Resp. Pl. SMF at 1–2; *see* Dkt. No. 103-1 ("Pl. SMF"). Conversely, Plaintiffs are correct that City's Statement of Material Facts is not "short and concise," either. Pl. Resp. City SMF at at 1–2; *see* Dkt. No. 94-1 ("City SMF").
   Given the factual complexities of this litigation, and the helpfulness of these documents in sorting through the competing factual allegations of what transpired the night of the incident, the Court exercises its discretion in striking neither document.

Following an attack by a necrotizing fasciitis and corresponding surgery, Mr. Timothy Lalonde became blind, with "exceedingly diminished us of his right side, right arm, and shoulder." Pl. SMF ¶¶1–9. Mr. Lalonde had to use his left arm for basic tasks. *Id.* ¶¶12–18.

The night of February 29, 2020, upon hearing complaints from his daughter, Mr. Lalonde confronted Mr. Randall Outlaw, her daughter's then boyfriend. *Id.* ¶¶ 21–23, 44. Mr. Lalonde "express[ed] his concerns regarding Mr. Outlaw's theft of money and shooting firearms on the property [owned by Mr. Lalonde], as well as on the street in front of the home." *Id.* ¶44. Mr. Lalonde and Mr. Outlaw argued loudly, with each of them saying "fuck you" at the end of the argument. *Id.* ¶48, 53.

At that point, now past midnight, Officer Charles Shaver arrived on scene. *See id.* ¶54. Much of what occurred after this point is disputed. First, Plaintiffs claim that "Mr. Lalonde was wearing dark sunglasses and holding a white cane in his hand." *Id.* ¶57; Defendants dispute that Mr. Lalonde had his sunglasses and cane. City Resp. Pl. SMF" ¶57; County Resp. Pl. SMF ¶57. Mr. Shaver introduced himself to Mr. Lalonde as a police officer. Pl. SMF ¶60. Second, Plaintiffs claim that "[o]nce Officer Shaver identified himself, Mr. Lalonde stopped arguing with Mr. Outlaw and started to return home, using his cane. He said nothing to Officer Shaver. Mr. Lalonde did not yell at anyone after Officer Shaver identified himself." *Id.* ¶70. Defendants dispute this, arguing that Mr. Lalonde yelled at Mr. Shaver and was generally confrontational. County Resp. Pl. SMF ¶70; City Resp. Pl. SMF ¶70 ("Mr. Lalonde continued to yell, scream and use profanity throughout his encounter with the officers present on scene.").

Subsequently, three additional officers—Pryce, Sirles, and Deput Merria—arrived on scene. Pl. SMF ¶64. Defendant Pryce told Mr. Lalonde "let me see your hands, let me see your hands." Pl. SMF ¶71. Plaintiffs claim that Defendant Pryce was approaching him, and that as she

3

did so, "Mr. Lalonde turned his body in her direction and was not saying anything. Pl. SMF ¶71–72. Defendants dispute this, claiming that Mr. Lalonde was continuing to yell, and that "before Officer Pryce grabbed Mr. Lalonde to arrest him, he clenched his fists and said 'Fuck you.'" City Resp. Pl. SMF ¶72; *see also* County Resp. Pl. SMF ¶72. Plaintiffs claim that in response to Defendant Pryce's command, "Mr. Lalonde, with his blind cane in hand . . . raised his arms slightly." Pl. SMF ¶ 77. Defendants dispute that Mr. Lalonde had his cane and that he raised his arms, and alternatively suggest that Mr. Lalonde "flailed his arm at [Defendant Pryce] and pushed [her] arm away." County Resp. Pl. SMF ¶77 (quoting Dkt. 92-38 at 95 ("Pryce Deposition")); *see also* City Resp. Pl. SMF ¶77.

Plaintiffs claim that the three officers then tackled Mr. Lalonde, bringing him to the ground, with a neighbor hearing the wind getting knocked out of him. Pl. SMF ¶78. Defendants dispute this, claiming that the officers and Mr. Lalonde "fell to the ground," rather than being tackled. County Resp. Pl. SMF ¶78 (quoting Pryce Dep. at 109); *see also* City Resp. Pl. SMF ¶78.

The officers were then on top of Mr. Lalonde. *See* City SMF ¶ ¶ 286, 294–300.  Mr. Lalonde's left arm was under his body, and in Plaintiffs' account the officers struggled to get it out from under him. Pl. SMF ¶83. In Defendants' telling, Mr. Lalonde was resisting giving his arm to be handcuffed. City SMF ¶401. Plaintiff claims that "the officers continued to yank on Mr. Lalonde's left arm, doing so with such force that it tore his left rotator cuff [and] dislocated his elbow out of its socket. Pl. SMF ¶87. Defendants dispute this characterization but accept that these injuries occurred to Mr. Lalonde. *See* County Resp. PL. SMF ¶87. Defendants also claim that Mr. Lalonde tried to grab on to the officers, particularly Defendant Merria's vest. City SMF at  ¶¶ 308, 309, 543. By contrast, Plaintiffs claim that "[a]t no point did Mr. Lalonde resist or

attempt to grab the officers." Pl. SMF ¶88.  Officer Sirles used his taser on Mr. Lalonde's leg, purportedly "[b]ecause . . . the other officers were having difficulty gaining control of Timothy's arms." City SMF ¶¶413–14.

While Mr. Lalonde was lying on the ground, Defendant Pryce's knee came into contact with his head. Pl. SMF ¶90. There is a dispute over how forceful this contact was. *Compare* Pl. SMF  ¶90 ("OPD officer Pryce forcefully drove her knee into Mr. Lalonde's head and ear") *with* City Resp. Pl. SMF ¶90; Cnty. Resp. Pl. SMF ¶90 (quoting Defendant Pryce saying she did not "strike [Mr. Lalonde] in the head with [her] knee."). Mr. Lalonde's ear bled, and he has suffered hearing loss following the incident. *See* Pl. SMF ¶90.

After being handcuffed, Mr. Lalonde claims to have requested medical care, which Defendants dispute. *See* Pl. SMF ¶97; City Resp. Pl. SMF ¶97 ("Mr. Lalonde did not request medical attention and did not request an ambulance until he arrived at the OPD station.") (citations omitted); County Resp. Pl. SMF ¶97. If there was a request for medical care, it was not immediately acceded to. *See* Pl. SMF ¶97. Mr. Lalonde was then placed in the police car; it is disputed how he entered the vehicle. Plaintiffs claim "after learning that Mr. Lalonde could not seat himself in the police car because of his disability, OPD Officer Shaver and Deputy Merria forcefully threw Mr. Lalonde headfirst into the vehicle without concern for Mr. Lalonde's safety, and closed the back passenger door onto Mr. Lalonde's head." Pl. SMF ¶98. By contrast, Defendants claim that officers "escorted Mr. Lalonde to an OPD patrol vehicle and placed him in the back seat on the driver's side. County SMF ¶25. While this was occurring, Defendant Wescott arrived on scene. Pl. SMF ¶100.

Mr. Lalonde was transported to the Ogdensburg Police Department by Defendant Shaver. Pl. SMF ¶102; County SMF .¶27. It is disputed how Mr. Lalonde was handcuffed while in the

5

police car. Plaintiffs claim that "the officers handcuffed Mr. Lalonde's previously disabled right arm and wrist to the ceiling of the patrol car, as Mr. Lalonde's disability entailed the loss of muscles in his stomach and back prevented him from sitting upright." Pl. SMF ¶102. Defendants dispute this, claiming "Deputy Merria did not handcuff one of Mr. Lalonde's arms to the ceiling or any other part of the patrol vehicle." County SMF ¶26. As City Defendants explain, "it was a physical impossibility to handcuff Mr. Lalonde's right arm and wrist to the ceiling of the patrol car inasmuch as both of Mr. Lalonde's wrists were handcuffed behind his back." City Resp. Pl. SMF ¶ 102. Plaintiff claims that "[w]hile in the police car, Mr. Lalonde reaffirmed his urgent need to go to the hospital immediately." Pl. SMF ¶103. City Defendants dispute that Mr. Lalonde requested medical attention at that time. City Resp. Pl. SMF ¶103.

After arriving at the police station, Mr. Lalonde was removed from the vehicle. There is a dispute over how he was removed. Plaintiffs claim that Defendants Shaver and Wescott "attempted to pull Mr. Lalonde out of the patrol car by yanking on his feet while forgetting that his wrist was handcuffed to the car's interior." Pl. SMF ¶104. After removing the handcuff, Plaintiffs claim that the Defendants then successfully pulled Mr. Lalonde out of the car by his feet, making him fall on the ground. Pl. SMF ¶105. In Plaintiffs' account, "The officers then pulled Mr. Lalonde off the ground by his belt and the back of his pants, with such force that his jeans ripped and his leather belt tore in half." Pl. SMF ¶105. City Defendants dispute this, as they deny that Mr. Lalonde's wrist was ever handcuffed to the car, and instead claim that "Officer Shaver and Lieutenant Wescott opened the door and eased Timothy out of the car. City Resp. Pl. SMF ¶¶104–05.

Mr. Lalonde describes a series of humiliations while in the police station. *See* Pl. SMF ¶¶106–08. This includes having Mr. Lalonde navigate the station without proper assistance,

6

despite Mr. Lalonde's blindness. *Id.* City Defendants dispute Mr. Lalonde's characterization. City Resp. Pl. SMF ¶¶ 106–08. At one moment an officer "threatened to shoot Mr. Lalonde if he touched the officer again" after "accidentally brush[ing] up against [him]. Pl. SMF ¶107. City Defendants do not dispute this. *See* City Resp. Pl. SMF ¶107.

In the station, the officers asked Mr. Lalonde about a concocted assault on Patterson Street. Pl. SMF ¶109. Plaintiff interprets this as the officers attempting to blame him for his own injuries. *Id.*

As this was ongoing, Mr. Lalonde asked for medical care. Pl. SMF ¶110. Eventually, "Mr. Lalonde was . . . provided an ambulance and transported to Claxton-Hepburn Hospital in Ogdensburg." Pl. SMF ¶111; City Resp. Pl. SMF ¶111. After receiving an x-ray and pain killers at Claxton-Hepburn, Mr. Lalonde was transferred to Upstate Medical. *See* Pl. SMF ¶117. "Upon arriving at Upstate, Mr. Lalonde was informed that he had a torn left rotator cuff, a chipped bone in his left wrist . . . [and] torn tendons." Pl. SMF ¶118; *see* City Resp. Pl. SMF ¶118 (arguing that Mr. Lalonde mischaracterizes the evidence); Dkt. No. 96-1 at 56–57 (describing what the Upstate doctors told Mr. Lalonde). The doctors at Upstate attempted unsuccessfully to relocate Mr. Lalonde's elbow. *See* Pl. SMF ¶119.

Mr. Lalonde's injuries have had a lasting effect on him. *See* Pl. SMF ¶¶120–24, 149–59. Mr. Lalonde required two surgeries on his elbow, and will need surgery on his wrist. Pl. SMF ¶¶120–21. His "left wrist is rotationally compromised, with one of the bones detached." Pl. SMF ¶124. Mr. Lalonde believes he has experienced hearing loss, though the examining doctor could not definitively attribute that loss to the incident. Pl. SMF ¶¶123–24; City SMF ¶173. As a result of the incident, Mr. Lalonde is "unable to partake in any of the household chores, maintenance projects, etc., that he was able and willing to perform before March 1, 2020." Pl. SMF ¶149. As

a result, "Mrs. Lalonde is now forced to bear the entirety of the [household tasks]." Pl. SMF ¶151. The injuries and corresponding mental anguish have had significant psychological effects on Mr. Lalonde. Pl. SMF ¶155–59.

Mr. Lalonde claims that several of the statements made by Defendant officers in relation to the incident are fabricated. *See* Pl. SMF ¶¶125, 169. Defendants deny this. City Resp. Pl. SMF ¶125; County Resp. Pl. SMF ¶125.

"Approximately one year after the March 1, 2020 [incident] and after receiving repeated . . . phone calls from the OPD . . . in April 2021 OPD officer Hollister, upon OPD Chief Wescott's direction, arrived . . . at the Lalonde's home and requested that Mr. Lalonde accompany Officer Hollister at the OPD stationhouse." Pl. SMF ¶160; City Resp. Pl. SMF ¶160. In Plaintiffs' account, Officer Hollister threatened Mr. Lalonde with arrest, if he refused to come to the station. *See* Pl. SMF ¶162. City Defendants deny this, claiming that "Officer Hollister did *not* tell Timothy that he would get a warrant for his arrest if he did not come in voluntarily . . . and instead explained to him that he would *not* be placed under arrest." City Resp. Pl. SMF ¶162 (emphasis in original). After discussing this with his lawyer, Mr. Lalonde went to the police station. Pl. SMF ¶¶163–64. Plaintiffs claim that while at the police station, "Officer Hollister began to question Mr. Lalonde about the location of the incident on March 1, 2020, in an attempt to resurrect the false narrative that the incident occurred on Patterson." Pl. SMF ¶164. City Defendants deny this City Resp. Pl. SMF ¶164.

### III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instruct courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the

outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, granting summary judgment is improper if there are genuinely disputed material facts. *Id.*; *see also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of facts could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The nonmoving party may not rely on "mere conclusory allegations, speculation, or conjecture," *see Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)), and must present more than a mere "scintilla of evidence" supporting its claims. *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and "draw all reasonable inferences in favor of the nonmoving party," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), and "eschew credibility assessments," *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a Court's duty in reviewing a motion for summary judgment is "carefully limited" to "finding genuine disputes of fact," "not

to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### IV. DISCUSSION

This opinion proceeds claim by claim. The following claims are at issue in the MSJ; (1) State-law claims (including negligent infliction of emotional distress, intentional infliction of emotional distress, negligence, trespass, and loss of consortium); (2) Americans with Disabilities Act/Rehabilitation Act; (3) Section 1983 Municipal Liability; (4) Section 1983 Deliberate Indifference; (5) Section 1983 Fabricated Evidence; (6) Section 1983 Conspiracy; (7) Section 1983 False Arrest/False Imprisonment; (8) Section 1983 Assault and Battery; (9) Section 1983 Excessive Force;  (10) Section 1983 Failure to Intervene; (11) Section 1985(3) Conspiracy; (12) Section 1986 Failure to Prevent a Conspiracy.[2]

---

[2] Plaintiffs concede that the City of Ogdensburg Police Department and Saint Lawrence County Sheriff's Department are administrative arms of, respectively, the City of Ogdensburg and Saint Lawrence County, and therefore, are not amenable to be sued. *See* Resp. to City at 2, Resp. to Cnty. at 21. Therefore, Defendants City of Ogdensburg Police Department and St. Lawrence County Sheriff's Department are hereby dismissed as Defendants.

As Plaintiff failed to respond to Defendants' argument for summary judgment regarding Plaintiff's 42 U.S.C. ¶1985(3) conspiracy claim, 42 U.S.C. ¶1986 failure to prevent a conspiracy claim, 42 U.S.C. ¶1983 municipal liability failure to supervise theory, 42 U.S.C. ¶1983 supervisory liability, and request for punitive damages, Plaintiff has abandoned these claims. *See generally*, Resp. to Cnty.; Resp. To City; *see also Beers v. Gen. Motors Corp.*, No. 97-CV-482(NPM/DNH), 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999) ("Moreover, plaintiff's failure to oppose [defendant's] argument is deemed by the court as consent to summary judgment on th[ose] claims.") Therefore, Plaintiff's 42 U.S.C. ¶1985(3) conspiracy claim, 42 U.S.C. ¶1986 failure to prevent a conspiracy claim, 42 U.S.C. ¶1983 municipal liability failure to supervise theory, and 42 U.S.C. ¶1983 supervisory liability claims are dismissed with prejudice, and the request for punitive damages is stricken.

Plaintiffs concede their Section 1983 supervisory liability, Section 1985(3) conspiracy liability, and negligence claims against Defendant Bigwarfe. *See* Resp. to Cnty. at 21–22. Therefore, the ¶1983 supervisory liability, Section 1985(3) conspiracy liability, and negligence claims are dismissed with respect to Defendant Bigwarfe. As consortium claims are derivative on the presence of other claims, Plaintiffs' consortium claim against Defendant Bigwarfe is also dismissed. *See Hogan v. CVS Albany, LLC*, No. 119CV1455GLSDJS, 2022 WL 4549224, at *3 (N.D.N.Y. Sept. 29, 2022); Cnty. MSJ at 28.

**A.    State-Law Claims: Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Negligence, Trespass, and Consortium**

City Defendants argue that Plaintiffs have failed to comply with the pleading requirements of New York law, for their state-law claims. City MSJ at 42–47. They conclude that this necessitates dismissing all state-law claims against them. *Id.*

"State claims brought under state law in federal court are subject to state procedural rules." *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 250 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015). New York General Municipal Law ("GML ") § 50-i sets out requirements for plaintiffs seeking to sue a "city [or] county . . . for personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such city [or] county . . . or of any officer, agent, or employee thereof." *See* GML. The notice-of-claim provision allows a city or county time to investigate a claim, and potentially the opportunity to settle outside of court. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999). "[P]ursuant to § 50-i, a plaintiff must plead that: (1) a notice of claim was served; (2) at least thirty days elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant neglected to or refused to adjust or satisfy the claim." *Coggins,* 988 F. Supp. 2d at 251. "[F]ederal courts entertaining state-law claims against [state] municipalities are [therefore] obligated to apply the notice-of-claim provision." *Felder v. Casey*, 487 U.S. 131, 151 (1988). "[T]he plaintiff bears the burden of demonstrating compliance with the notice of claim requirement." *Chabot v. Cnty. of Rockland, New York*, No. 18-CV-4109 (KMK), 2019 WL 3338319, at *9 (S.D.N.Y. July 25, 2019). The Second Circuit has instructed courts to construe the notice-of-claim requirements

11

strictly. *Hardy,* 164 F.3d at 793. "Failure to comply with these requirements ordinarily requires a dismissal." *Id.*

When a plaintiff sues individual defendants and "the City has a duty to indemnify them," the notice of claim requirement is applicable. *Dorsey v. City of Albany Police Dep't*, No. 1:15-CV-859, 2016 WL 11605138, at *2 (N.D.N.Y. Apr. 13, 2016); *see also* GML §50-j. Under New York law, a city is "liable for . . . any duly appointed police officer of such municipality . . . for any . . . tort, provided such police officer, at the time of . . . tort complained of, was acting in the performance of his duties and within the scope of his employment*."* GML §50-j. Plaintiff concedes that Defendants Shaver, Pryce, Sirles, Wilson, and Merria were acting "within the course and scope of their employment. *See* Compl. ¶10. Plaintiff does not state whether the same is true for Chief Wescott, *see* Compl. ¶¶8–9, so the Court will decide whether he was "acting in the performance of his duties and within the scope of his employment," so as to trigger the notice of claim requirement.

"A police officer is deemed to be acting in the performance of his duties and within the scope of his employment 'when engaged in the immediate and actual performance of a public duty imposed by law and such public duty performed was for the benefit of the citizens of the community wherein such public duty was performed.'" *Dorsey*, 2016 WL 11605138 at *2 (quoting N.Y. Gen. Mun. Law § 50-j). Pursuant to this standard

> the court weighs the following factors: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Id.* at *3 (quoting *Pizzuto v. Cty. of Nassau*, 239 F. Supp. 2d 301, 313 (E.D.N.Y. 2003)). Having weighed these factors, the Court concludes that any relevant acts committed by

Defendant Wescott were done in performance of his duties and within the scope of his employment. Defendant Wescott was on duty when he responded to the scene. *See* Wescott Dep. at 64–66. Actions such as meeting with fellow officers after an arrest, assisting with booking an arrestee, and securing fingerprints after an arrest, are those "commonly done by" a police officer. *See* City SMF 625–27, 652; Dkt. No. 96-9 at 20–27 ("Hollister Deposition").

Therefore, if Plaintiff has not met the pleading standards under the GML, all state claims must be dismissed. Plaintiffs' complaint reads "Plaintiffs have complied with all conditions precedent, including filing of a Notice of Claim under General Municiapl Law 50-3 with Defendants' City and County." Compl. ¶15. City Defendants argue that because the Complaint does not allege "that (1) a notice of claim was served upon the city; (2) at least thirty days have elapsed since the Notice of Claim was served and before the complaint was filed; or (3) in that time the City has neglected to or refused to adjust or to satisfy the claim," Plaintiffs have not plead compliance with the notice-of-claim requirements, and the state law claims against the City and its employees must be dismissed. *See* City MSJ at 43–47. Failing to meet the notice-of-claim requirement eliminates the Court's subject matter jurisdiction. *Rivera v. City of New York*, No. 1:20-CV-9968-GHW, 2022 WL 1523165, at *3 (S.D.N.Y. May 13, 2022). Therefore, the Court will also evaluate this argument as it relates to County Defendants as well, *sua sponte. See Edwards v. Montgomery*, No. 519CV0923BKSTWD, 2019 WL 4805380, at *4 (N.D.N.Y. Oct. 1, 2019), *report and recommendation adopted*, No. 519CV0923BKSTWD, 2019 WL 7037617 (N.D.N.Y. Dec. 20, 2019).

Plaintiffs argue that pleading that they had "affirmatively 'complied with all conditions precedent, including filing a Notice of Claim'" is sufficient to meet New York's notice of claim requirements. Resp. to City at 50. This is incorrect. The statute at issue clearly states that a claim

13

covered by the GML must contain "as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of [a] notice [of claim] . . . and that adjustment or payment thereof has been neglected or refused." GML. The Complaint does not so allege. *See generally* Compl. As these requirements are construed strictly, *Hardy,* 164 F.3d at 793, Plaintiff's remaining state-law claims – negligent infliction of emotional distress, intentional infliction of emotional distress, negligence, trespass, and consortium – against all Defendants must be dismissed for lack of subject matter jurisdiction. The dismissal is without prejudice.

Consequently, Mrs. Lalonde has no surviving claims, and she is hereby dismissed from this lawsuit.

**B.     Americans with Disabilities Act**

Title II of the Americans with Disabilities Act (ADA) states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act (RA), likewise, prohibits discrimination on the basis of disability by programs receiving federal funding. 29 U.S.C. § 794(a). Courts analyze claims under the Rehabilitation Act and Americans with Disabilities Act together, as the standards "are nearly identical." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). As this Court has previously explained, "it is well-settled that vicarious liability principles apply under the ADA." MDO at 47 (citing *Morales v. City of New York*, No. 13-CV-7667 (RJS), 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016) ("[T]he law is

14

clear that municipalities may be held vicariously liable for violations of Title II of the ADA and Section 504 of the Rehabilitation Act committed by their agents.")).[3]

A plaintiff bringing suit under Title II of the ADA or section 504 of the RA must show:

(1) he is a qualified individual with a disability;
(2) the defendant is subject to one of the Acts; and
(3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability.

*McElwee*, 700 F.3d at 640.

The Court finds that the first two elements of an ADA/RA claim are met. Neither County Defendants nor City Defendants contest that Mr. Lalonde is a qualified individual with a disability under the terms of the statutes, and that they are each respectively covered by the ADA. *See generally*, Cnty. MSJ; City MSJ. Therefore, the viability of Plaintiff's ADA/RA claim rests on whether he can demonstrate he was denied participation in, the ability to benefit from, or was otherwise discriminated against in, defendant County's "services, programs, or activities."

     *1.  Arrest as a "service, program, or activity"*

Defendant County argues that "Mr. LaLonde has never identified the service, program, or activity from which he was allegedly excluded." Cnty. MSJ at 15. Plaintiffs, by contrast, claim, that "[p]olice officers 'who are acting in an investigative or custodial capacity are performing

---

[3] Earlier in this case, this Court dismissed Plaintiffs' ADA and RA claims against individual Defendants in their individual capacities but allowed Plaintiffs' ADA and RA claims to proceed against individual defendants "in their official capacities." Dkt. No. 22 at 43–44 ("Motion to Dismiss MDO"). The individual defendants were sued, however, only in their individual capacities. See Comp. at ¶8–10. Plaintiffs "acknowledge[e] that there is no individual liability under Title II of the ADA," and aver that they are bringing ADA claims only against the County and City. Resp. to Cnty. at 14; Resp. to City at 33.  Therefore, though County Defendants and Defendant Merria have sought to dismiss any surviving ADA/RA claims against the individual defendants, Merria MSJ at 19–20; County MSJ at 13–14, the Court finds that there are no surviving ADA/RA claims against the individual defendants for this Court to dismiss.

'services, programs, or activities' within the scope of Title II." Resp. to Cnty. at 15 (quoting *Williams v. City of New York*, 121 F. Supp 3d 354, 368 (S.D.N.Y. 2015). The Court agrees with Plaintiff for the reasons stated below.

Courts have interpreted "[t]he phrase 'services, programs, or activities' . . . to be 'a catch-all phrase that prohibits all discrimination by a public entity." *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (quoting *Innovative Health Sys., Inc. v. City of White Plains,* 931 F.Supp. 222, 232 (S.D.N.Y. 1996), *aff'd in part,* 117 F.3d 37 (2d Cir. 1997), *recognized as superseded on other grounds, Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 171 n.7 (2d Cir. 2001)). "As the Second Circuit has explained, the ADA should be 'broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Williams v. City of New York*, 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015) (quoting *Noel*, 687 F.3d at 68).

District courts in this circuit have therefore consistently found that the ADA applies in the arrest context. *See Morales,* 2016 WL 4718189 *7 ("[N]umerous courts within this Circuit have in the context of arrests . . . recognized claims under the ADA and Rehabilitation Act where police . . . fail to reasonably accommodate a plaintiff's disability during the . . . arrest.") (collecting cases) (cleaned up).

As the officers' interaction with and arrest of Mr. Lalonde constitutes a "program, service, or activity" within the ADA, the analysis now turns to whether the officers discriminated against Mr. Lalonde in that interaction. There are three types of discrimination claims a plaintiff can bring under the ADA, *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009), two of which are at issue: intentional discrimination (disparate treatment) and failure to accommodate, *see* Cnty. MSJ at 14.

16

## 2. Intentional Discrimination (Disparate Treatment)

"To prove intentional discrimination under [the ADA], 'a plaintiff must allege facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policy maker acted with deliberate indifference to his rights under the ADA.'" *Johnson v. New York State Police*, 659 F. Supp. 3d 237, 253 (N.D.N.Y. 2023) (quoting *Vassenelli v. State Univ. of New York*, No. 517CV00082MADATB, 2018 WL 1406629, at *3 (N.D.N.Y. Mar. 19, 2018)). A plaintiff can meet his burden of demonstrating deliberate indifference under the ADA where "an official who at minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Felix v. City of New York*, 344 F. Supp. 3d 644, 665 (S.D.N.Y. 2018) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)). To be actionable, "[d]eliberate indifference must be a 'deliberate choice[,] rather than negligence or bureaucratic inaction.' *Blevins v. Town of Brighton*, No. 24-CV-6080-MAV, 2025 WL 1906756, at *6 (W.D.N.Y. July 10, 2025) (quoting *Loeffler*, 582 F.3d at 276) (alteration in original).

Plaintiffs argues that Defendant County engaged in deliberate indifference through its "complete absence of any specific policies, protocols, and trainings provided to its law enforcement personnel with respect to the accommodation of individuals with . . . disabilities whom the police department subjects to custodial detention, arrest and /or pre-arraignment detention." Resp. to Cnty. at 18.

Defendant County's argues in rebuttal that the County has provide significant amounts of training to its officers, including regarding people with disabilities. *See* Cnty. Reply at 15. Plaintiff argues, by contrast that the County provides no "training whatsoever provided to its

17

Sheriff deputies . . . on the accommodations required when effectuating an arrest or detention of visually impaired, or physically or mentally disabled arrestees and detainees." Resp. to Cnty. at 18. This claim is plainly contradicted by the record. *See* Dkt. No. 92-10 ("Filiatrault Declaration") ¶¶ 27–33 (describing how all Sheriff's Office deputies go through a training course which "include[s] . . . training that equips individuals to identify individuals with disabilities and to interact with them in the most appropriate and effective manner); Dkt. No. 92-14 ("County Disabilities Curriculum") (describing the six hours of content that Sheriffs are provided about how to interact with people with disabilities). As "a reasonable jury" could not find that the County Sheriff's Office failed to provide training to its deputies regarding people with disabilities, this Court finds that the County did not possess "deliberate indifference" towards people with disabilities, and the intentional discrimination claim under the ADA fails.

As with the County, Plaintiffs falsely claim that the City Police Department provides no training regarding people with disabilities. *Compare* Plaintiff's City SMF 129–30; Resp. to City at 37 (claiming the City provides no "training whatsoever . . . to its OPD personnel . . . on the accommodations required when effectuating an arrest or detention of visually impaired, or physically or mentally disabled arrestees and detainees."); *with* ECF Dkt. No. 105-17 ("Basic Course Section E"). Therefore, Plaintiffs' ADA intentional discrimination claim against City fails as well.

### 3. *Reasonable Accommodation*

"Under Title II of the ADA, a defendant discriminates when [he/she] fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" *Durr v. Slator*, 558 F. Supp. 3d 1, 27 (N.D.N.Y. 2021) (quoting *Powell v. Nat'l Bd. Of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004), *opinion*

*corrected on other grounds*, at 511 F.3d 238 (2d Cir. 2004)). In the context of a lawful arrest, a reasonable accommodation claim is meritorious if "officers . . . fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.' *Id.* at 28.

"A plaintiff alleging that he was denied a reasonable accommodation bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue." *McElwee*, 700 F.3d at 642. "[A] reasonable accommodation must have a 'demonstrated relationship' to the disability." *Levine v. Project Renewal*, No. 24-CV-0616 (LTS), 2024 WL 773722, at *3 n.4 (S.D.N.Y. Feb. 26, 2024). If a plaintiff demonstrates the existence of "a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' the defendant bears the burden of proving that the requested accommodation is not reasonable." *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). Defendant County argues that Plaintiff Mr. Lalonde has not met his burden, and has not "identif[ied] the specific accommodation that was reasonable, feasible, and would have effectively addressed Mr. Lalonde's disability-related limitations." Cnty. MSJ at 20.

Plaintiff proposes the following accommodation: "where an arrestee expresses or presents a disability, de-escalation rather than a heightened use of force is a reasonable and required accommodation." Resp. to Cnty. at 16. As a general rule, plaintiff's contention fails. It cannot be the case that *any* disability *always* requires de-escalation. "De-escalation rather than a heightened use of force" is generally desirable in officer-civilian interactions, regardless of the person's disability status. *See id.; Stratakos v. Nassau Cnty.*, No. CV 15-7244 (GRB), 2021 WL 2587722, at *7 (E.D.N.Y. June 24, 2021)("*It is a best practice among police professionals to de-escalate

19

volatile situations and avoid and/or minimize the use of force where practicable."). Sometimes, however, force must be used. Sometimes, force must be used against someone with a disability. If a mass-shooter happens to use a wheelchair, de-escalation is *not* "a reasonable and required accommodation." *Contra* Reply to Cnty. at 16. Rather than a general rule that *any* disability *uniformly* requires de-escalation, the cases Plaintiffs cite support the notion that de-escalation *can* be a required accommodation, based on the specifics of the plaintiff's disability. *See Sage v. City of Winooski through Police Dep't*, No. 2:16-CV-116, 2017 WL 1100882, at *4 (D. Vt. Mar. 22, 2017) ("violent behavior could arguably have been avoided if the officers had acknowledged and accommodated [the plaintiff's] *mental illness. . . .* by avoiding physical contact and calling a nearby mental health counselor"); *Durr*, 558 F. Supp. 3d at 33, *citing Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) (holding that with respect to someone with *mental illness*, plaintiff had adequately pled that "the officers should have respected her comfort zone, engaged in non-threatening communications and used the passage of time to defuse the situation rather than precipitating a deadly confrontation"); *O'Brien v. City of Syracuse*, No. 5:22-CV-948 (MAD/TWD), 2025 WL 1519411, at *1, 15 (N.D.N.Y. May 27, 2025) (a plaintiff's allegation that "officers 'could have stepped back, created a perimeter around the house, and afforded [plaintiff] a cooling-off period," when the plaintiff was as *"an allegedly mentally disabled* woman," adequately stated a failure to accommodate claim).

Plaintiffs have identified an accommodation, de-escalation, but have not demonstrated a relationship between the proposed accommodation and Mr. Lalonde's disability, as required. *See Levine,* 2024 WL 773722, at *3 n.4. Plaintiffs do not discuss why Mr. Lalonde's disabilities – blindness and limited use of certain muscles – require that the police deescalate an encounter.

20

*See* Resp. to Cnty. at 14, 16–17; Resp. to City at 34–36. As Plaintiffs have not met their burden of demonstrating a connection between the proposed accommodation and Mr. Lalonde's disability, Plaintiffs' reasonable accommodation theory fails. *See Levine,* 2024 WL 773722, at *3 n.4. Defendants are thus granted summary judgment on Plaintiffs' ADA/RA claims, which are hereby dismissed.

## C.    Section 1983

42 U.S.C. § 1983 allows for suit against a "every person," who, under color of law, "subjects, or causes to be subjected . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 ("Section 1983"). "[Section] 1983 provides a vehicle by which to seek redress against state actors for a wide range of constitutional violations." *Reynolds v. Barrett*, 741 F. Supp. 2d 416, 425 (W.D.N.Y. 2010), *aff'd*, 685 F.3d 193 (2d Cir. 2012). Each of the claims Plaintiffs bring under Section 1983 are discussed in turn.

### 1. Municipal Liability

The Supreme Court has interpreted the word "person" in Section 1983 to include municipalities, and thus, "[l]ocal governing bodies . . . can be sued . . . under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). This *Monell* liability "impose[s] civil liability on municipalities for their *own* illegal acts," not the illegal acts of their employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The "injury [must be] caused by a municipal policy or custom." *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 30–31 (2010).

21

There are four means by which a plaintiff can meet the policy or custom requirement: (1) "a formal policy exists subjecting the municipality to liability"; (2) "a policy-making official for the municipality caused a deprivation of [the plaintiff's] constitutional rights"; (3) "a practice was so consistent and widespread that it constitutes a tacit custom that 'is so widespread as to have the force of law'"; (4) "policymakers failed to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who interact with municipal employees." *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 36 (N.D.N.Y. 2020) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–07 (1997)). "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

Plaintiff argues that *Monell* liability attaches in two ways. First, that Defendants City and County failed to train its officers such that it exhibited "deliberate indifference," and second, that Defendants City and County failed to screen veteran officers when hiring. *See* Resp. to Cnty. at 5–13; Resp. to City at 40–48. This Court will consider both arguments in turn.

### a.   Failure to Train

The Second Circuit has established three requirements for a failure to train *Monell* claim: (1) A reasonable finder of fact must be able to "conclude that a policy-maker knows to a moral certainty that her employees will confront a given situation"; (2) "The situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; (3) "The wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional

rights." *Green v. City of New York*, 465 F.3d 65, 80–81 (2d Cir. 2006) (cleaned up). To survive summary judgment, there must be "a specific deficiency in the city's training program . . . and the deficiency [must be] closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Id.* at 81 (quoting *Amnesty Am.*, 361 F.3d at 129. Indeed, as the Supreme Court has recognized, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

As discussed with respect to the ADA, Plaintiffs' are factually wrong in suggesting that the County's and City's officers received no training regarding how to respectfully interact with people with disabilities. *See* section IV(B).[4] As Plaintiffs have not described how this training is inadequate, *see* Resp. to Cnty. at 5–6; Resp. to City at 41–42 this Court finds that Plaintiffs have not met their burden of demonstrating any deficiency in the training provided. *Green,* 465 F.3d at 81. Therefore, the Court grants summary judgment on the Plaintiffs' Section 1983 municipal liability claim based on a failure to train

### b.   Failure to Screen

Plaintiffs briefed a theory of the County's failure to screen, when responding to County and City Defendants' summary judgment motion. Resp. to Cnty. at 11–13; Resp. to City at 46–48. In reply, County Defendants argued that Plaintiffs "assert[ed] a new theory" that "was neither pleaded in the Complaint nor disclosed at any point during discovery." County Rep. at 10.

---

[4] Inexplicably, Plaintiffs' Response to the *County* dispute whether the *City* provided training to its officers. *See* Resp to Cnty. at 5–6.

A party generally may not "assert a cause of action for the first time in response to a summary judgment motion*," LeBlanc v. United Parcel Serv.*, No. 11 CIV. 6983 KPF, 2014 WL 1407706, at *17 (S.D.N.Y. Apr. 11, 2014).

> [C]laims that are related to or are mere variations of previously pleaded claims—that is, claims based on the same nucleus of operative facts and similar legal theories as the original claims—may be raised on a motion for summary judgment where the defendant was clearly on notice from the complaint and was not unfairly prejudiced.

*Henry v. Metro. Transp. Auth.*, No. 07 CIV. 3561 DAB, 2014 WL 4783014, at *10 (S.D.N.Y. Sept. 25, 2014) (quoting *Coudert v. Janney Montgomery Scott, LLC*, No. 3:03 CV 324 MRK, 2005 WL 1563325, at *2 (D. Conn. July 1, 2005), *aff'd sub nom. Coudert v. Janney Montgomery Scott, LLC.*, 171 F. App'x 881 (2d Cir. 2006).

Plaintiffs' Complaint failed to put Defendants on notice of an intent to pursue a failure to screen claim. Plaintiffs' Complaint alleged facts relating to Defendants City's and County's use of force policies, investigations, and training. *See* Compl. ¶108.  The Complaint did not make any allegations regarding hiring, except as follows: "Defendants' [sic]  . . . failed to properly *hire*, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Officers' [sic], Chief Wescott . . . and other City and County personnel, with deliberate indifference to Mr. Lalonde's Constitutional rights." Compl. ¶ 109 (emphasis added). This mere invocation of the word "hire," in a long list of verbs, without supporting allegations, provides little notice to Defendant of Plaintiffs' intended claims. The *Monell* section of the Complaint clearly indicates an intent to bring failure to train and failure to supervise claims, and not a failure to hire, given that *not one* of Plaintiffs' ten specific claims in the complaint relates to hiring. Complaint ¶108(a–h). Thus, this Court will not consider Plaintiffs' argument. *See Zaniewska v. City of New York,* No. 11-CV-2446 RRM VVP, 2013 WL 3990751, at *10 (E.D.N.Y. Aug. 5, 2013), *aff'd*,

24

569 F. App'x 39 (2d Cir. 2014) (refusing to consider alternative *Monell* theories that were raised only in response to summary judgment).

As Plaintiffs have not provided a viable theory of *Monell* liability, and attempted to bring a new claim not brought before in their briefing, Defendants County and City are granted summary judgment on Plaintiff's Section 1983 *Monell* claim.

### 2. Deliberate Indifference

"The Due Process Clause . . . requires the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). The standard for deliberate indifference to an arrestee's medical condition is the same under the Fourteenth Amendment's due process clause as it would be under the Eighth Amendment. *Brock v. Logsdon*, No. 19-CV-6082, 2022 WL 17488612, at *6 (W.D.N.Y. Dec. 7, 2022). A successful deliberate indifference claim must meet two requirements: (1) the objective requirement that "the alleged deprivation of adequate medical care . . . be sufficiently serious"; and (2) the subjective requirement that "the charged officials . . . be subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal citations omitted).

To meet the objective requirement, there must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

> "When the basis for a [medical indifference] claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in "objective terms, sufficiently serious."

25

*Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Specifically, "[it is] the particular risk of harm faced by a [arrestee] due to the challenged deprivation of care, rather than the severity of the [arrestee's] underlying medical condition, considered in the abstract, that is relevant." *Id.* at 186. When the indifference at issue is a delay of care, "the relevant time period begins when a defendant becomes aware of facts from which he could, and does, infer that a substantial risk of serious harm exists." *Morrison v. New York City Dep't of Corr.*, No. 11 CIV. 9109 DAB, 2013 WL 5308015, at *4 (S.D.N.Y. Sept. 20, 2013).

Defendant Merria and City Defendants argue that the delay in calling for medical assistance (seven to sixteen minutes) was of an insufficient length to satisfy the objective requirement. Merria MSJ at 13–14; City MSJ at 15–16. Merria also relies on the fact that "[t]here is no allegation or evidence that any alleged delay in receiving medical treatment exacerbated Mr. Lalonde's condition." Merria MSJ at 13. Plaintiffs argue that the injuries to Mr. Lalonde were "sufficiently serious," Resp. to Merria at 13–14, but, given the Second Circuit's holding in *Smith*, the extent of the injuries are insufficient to meet the objective prong. 316 F.3d at 185.

 Courts in this Circuit have held that a deprivation is not sufficiently serious unless there is a "significant delay in medical treatment." *Santiago v. City of New York*, No. 98 CIV. 6543 (RPP), 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000). Delays of less than two hours have not been held to be significant. *See id.* (holding that a delay was not sufficently serious when police called EMS twenty-six minutes after the plaintiff reported of pain, the EMS to arrived nine minutes later, and plaintiff reached the hospital the one hour and ten minutes after that); *Rivera v. State of N. Y.*, No. 96 CIV. 7697 (RWS), 1999 WL 13240, at *6 (S.D.N.Y. Jan. 12, 1999) (holding that it was not deliberate indifference when the plaintiff, who had been shot,

26

"was brought to the medical clinic less than one hour after his injury was reported and brought to the hospital less than two hours after the medical clinic referred him there.").

On these facts, the precedent clearly shows that "the particular risk of harm faced by [Mr. Lalonde] due to the challenged deprivation of care" was not sufficiently serious to qualify as deliberate indifference. To be clear, Mr. Lalonde was bleeding from his ear and was requesting medical care, and the fact that he needed to transfer hospitals, shows that his medical condition was serious. Pl. SMF ¶90, 178. But, if, in *Rivera*, a nearly two hour delay in bringing someone who was shot to the hospital was insufficiently serious, *see* 1999 WL 13240 at *6, then a similarly timed delay on these facts must be as well. The Court grants Defendants summary judgment on Plaintiffs' deliberate indifference claim.

### 3. Fabrication of Evidence

"To succeed on a fabricated-evidence claim, a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[red] a deprivation of life, liberty, or property as a result.'" *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021). "The mere fact that the parties present conflicting evidence does not mean that one side's evidence was fabricated." *Davis-Guider v. City of Troy*, No. 23-589, 2024 WL 5199294, at *3 (2d Cir. Dec. 23, 2024). [A] plaintiff must prove a defendant's fabrication was "made knowingly." *Id.* (quoting *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015)). "Testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014).

As Defendant Meria and City Defendants make different arguments with respect to why they should be granted summary judgment on the fabrication of evidence claim, the Court discusses them separately.

a.  Defendant Merria

Defendant Merria claims, and Plaintiffs do not dispute, that "the only information provided by Deputy Merria to OPD, and which presumably was included within the arrest file . . . sent to the District Attorney's Office, is the information contained in Deputy Merria's supporting deposition." Merria MSJ at 15; *See* Resp. to Merria at 16–18; Dkt. No. 90-6 ("Merria Supporting Deposition"). As it is a requirement for a fabrication of evidence claim that the information be given to prosecutors, *see Ashley*, 992 F.3d at 139, the Court will limit its inquiry to Merria's Supporting Deposition. Plaintiffs argue that the following sections are fabricated:

> Upon my arrival a male subject was yelling at members of the Ogdensburg City Police at which time they advised him he was under arrest. The subject did resist arrest and was brought to the ground. . . . The subject did continue to resist arrest on the ground by pulling my police vest, refusing to let go and not following directions.
> Merria Supporting Dep; *see* Resp. to Merria at 18.

In its reply to a contention interrogatory, when asked to "[i]dentify each and every action of Sheriff Merria you contend was unconstitutional," Plaintiffs responded that Defendant Merria "fabricat[ed] inculpatory statements attributed to Mr. Lalonde." Dkt. 90-20 ("Response to County Interrogatories") at 4. This is the only allegation plausibly related to fabricating evidence. *See id.* at 4–5. Defendant argues that "Plaintiff's responses to contention interrogatories show that the [fabrication of evidence] claim is based on allegedly fabricated inculpatory statements attributed to Mr. Lalonde," but the only document that could be used to support a fabrication of evidence claim does not describe any statements allegedly made by Mr. Lalonde. Merria Reply at 8.

28

Interrogatories interposed under Rule 33(c), otherwise known as contention interrogatories, serve "to discover the theory of the responding party's case." *Salter v. I.C. Sys., Inc.*, No. 3:04 CV 1566(RNC), 2005 WL 3941662, at *1 (D. Conn. May 3, 2005). "The Second Circuit has not ruled on the issue of whether interrogatory responses are binding judicial admissions but several district courts have determined they are." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 390 (N.D.N.Y. 2011) (collecting cases). In order to pursue a theory of liability, a plaintiff's answers to Contention Interrogatories must reflect the theory, its responses must be amended to reflect the theory, or plaintiff must "show[] that this omission was harmless or provide[] a justification for it." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 117 F. Supp. 3d 276, 298 (S.D.N.Y. 2015). It is not necessary for the defendant to have been prejudiced for the failure to include and/or amend to preclude a theory of liability. *See Bergin v. New York State Unified Ct. Sys.*, No. 22-CV-5264 (BMC), 2024 WL 4665266, at *3 (E.D.N.Y. Nov. 4, 2024) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 117 F. Supp. at *3). District courts have "broad discretion" in deciding whether an issue is precluded by a party's response to contention interrogatories. *See Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, No. 13 CIV. 2576 (LGS), 2017 WL 1133425, at *4 n. 4 (S.D.N.Y. Mar. 24, 2017), *aff'd sub nom. Int'l Cards Co. Ltd. v. Mastercard Int'l Inc*, 741 F. App'x 41 (2d Cir. 2018).

Plaintiffs have apparently changed his theory since the contention interrogatory. Plaintiffs now argue that Defendant Merria fabricated that "officers inform[ed] Mr. Lalonde that he was under arrest, what offense he had committed, [and] why he was under arrest," that he "tr[ied] t affirmatively punch, kick, or grab hold and wrestle with . . . the responding officers," and "resist[ed] or attempt[ed] to grab the officers." Resp to Merria MSJ at 18. This is a different

29

theory from arguing that Merria "fabricat[ed] inculpatory statements," Resp. to Cnty. Interrogatories at 4, and is thus impermissible. Therefore, Defendant Merria is granted summary judgment on Plaintiffs' fabrication of evidence claim.

a.  City Defendants

City Defendants argue that the claim that Defendants "fabricated any evidence . . . is . . . unsupported by the record evidence before this Court." City MSJ at 22. The City observes that "there is simply no record evidence of any fabricated statements attributed to Timothy 'that fallaciously attempted to shift the blame for his injuries away from the officers to Timothy himself and/or some imaginative gang of roving young men in Ogdensburg who assaulted disabled and blind men like Mr. Lalonde.'" City MSJ at 22 n. 6 (quoting Compl. ¶101) (cleaned up).

Plaintiffs, conversely, argue that the disagreement over Mr. Lalonde's behavior prior to and during his arrest demonstrate that there is a genuine dispute of material fact with respect to the fabrication of evidence. Resp. to City at 31–32.

This Court finds that Plaintiffs have not met their burden at summary judgment. The Court acknowledges that there is a dispute over when Mr. Lalonde was yelling, who he yelled at, and whether he resisted arrest. *See* Resp. to City at 31–32. But even if Defendant Officers' accounts turns out to have been wrong, it does not follow that they intentionally fabricated evidence. *See Davis-Guider v. City of Troy*, No. 1:17-CV-1290 (DJS), 2023 WL 2693438, at *7 (N.D.N.Y. Mar. 29, 2023), *aff'd*, No. 23-589, 2024 WL 5199294 (2d Cir. Dec. 23, 2024) ("Courts across the country have recognized that 'testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong.'") (quoting *Halsey v. Pfeiffer*, 750 at 295). Plaintiffs have presented no evidence of intentional fabrication

that would meet the *scienter* requirement of their claim. *See Davis-Guider*, 2024 WL 5199294 at

*3. Given this absence of evidence, City Defendants are entitled to summary judgment on the

fabrication of evidence claim. *See Panagatos v. Petsmart, Inc.*, No. 18-CV-5032 (SJF) (AKT),

2020 WL 7343409, at *5 (E.D.N.Y. Dec. 14, 2020) ("[T[he absence of evidence at the summary

judgment stage redounds to the detriment of the plaintiff, not the defendant.") (quoting *Santora*

*v. Costco Wholesale Corp.*, No. 17-CV-4415 (CS), 2018 WL 5886442, at *3 (S.D.N.Y. Nov. 8,

2018)).

### 4.   *Section 1983 Conspiracy*

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or

more state actors or between a state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[T]o survive a motion for summary

judgment, the non-moving party's evidence of a § 1983 conspiracy must, at least, reasonably lead

to the inference that [the defendants] positively or tacitly came to a mutual understanding to try

to accomplish a common and unlawful plan." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439

(W.D.N.Y. 2018) (alteration in original).[5] That is, the "plaintiff 'must provide some factual basis

---

[5] The parties appear to express disagreement over the appropriate standard of review for a motion for summary judgment regarding a Section 1983 conspiracy claim. *See* Resp. to Merria at 19; Merria Reply at 8. As with any other motion for summary judgment, when the burden at trial would be on the plaintiff, the moving defendant "may satisfy his burden . . . in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988). Applying that rule to this case, the moving party, Defendant Merria, must show that Plaintiffs' evidence of a conspiracy is insufficient. "[T]he moving party need not make any affirmative prima fascine showing on a motion for summary judgment," and need only "point[t] to an absence of evidence" support Plaintiffs. *Panagatos*, 2020 WL 7343409, at *5 (E.D.N.Y. Dec. 14, 2020) (quoting *Lyman v. PetSmart, Inc.*, No. 16 CIV. 04627 (JCM), 2018 WL 4538908, at *3 (S.D.N.Y. Sept. 21, 2018)). "[T[he absence of evidence at the summary judgment stage

supporting a meeting of the minds.'" *Ivery,* 284 F. Supp. at 439 (quoting *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003)).

In response to Defendants' Motion, Plaintiffs limit their conspiracy claim to alleging that "City Defendants and Deputy Merria had an agreement to fabricate and falsify evidence as the means by which to cover up their excessive force." *See* Resp. to Merria at 20, Resp to City at 22.

The second element of conspiracy requires that there be an "underlying constitutional violation." *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011). In the absence of such a violation, the count must be dismissed. *See id.* As this Court has granted summary judgment for Defendants on Plaintiffs' fabrication of evidence claim, *see* section IV(C)(3), the corollary Section 1983 Conspiracy claim also fails. Defendants are therefore granted summary judgment on the Section 1983 Conspiracy claim.

### 5. *False Arrest / False Imprisonment*

Defendant Merria and City Defendants move for summary judgment on Plaintiffs' false arrest claim, arguing that the Defendant officers had probable cause to arrest Plaintiff Mr. Lalonde. City MSJ at 8–10; Merria MSJ at 4–6. Defendant Merria argues that he reasonably relied on the OPD officers who decided to arrest Mr. Lalonde. Merria MSJ at 6–7. In the alternative, City Defendants and Defendant Merria argues that qualified immunity applies to the false arrest claim. City MSJ at 11–12; Merria MSJ at 7–8.

"False arrest and false imprisonment . . . are two names for the same tort." *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 209 (S.D.N.Y. 2024) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). Therefore, these claims are analyzed together.

---

redounds to the detriment of the plaintiff, not the defendant." *Id.* at *5 (E.D.N.Y. Dec. 14, 2020) (quoting *Santora*, 2018 WL 5886442, at *3.

"In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (quoting *Davis*, 364 F.3d at 433). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* To determine whether probable cause is present, "a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.'" *Ashley*, 992 F.3d at 136 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)).

Defendants argues that there was probable cause to arrest Mr. Lalonde for disorderly conduct. Merria MSJ at 5; City MSJ at 8–9. Under New York law, a person commits disorderly conduct "when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof," an individual (as is relevant here) "makes unreasonable noise . . . or [in] a public place, . . . uses abusive or obscene language, or makes an obscene gesture." N.Y. Penal Law §240.20(2), (3). "The New York disorderly conduct statute punishes 'disruptive behavior . . . of public rather than individual dimension.'" *Provost v. City of Newburgh*, 262 F.3d 146, 157

(2d Cir. 2001) (quoting *People v. Munafo*, 406 N.E.2d 780, 783 (N.Y. 1980) (alterations in original). "The clear aim was to reserve the disorderly conduct statute for situations that carr[y] beyond the concern of individual disputants to a point where they . . . become a potential or immediate public problem." *Id.* (quoting *Munafo*, 406 N.E.2d at 783) (alterations in original); *see also People v. Baker*, 984 N.E.2d 902, 906 (N.Y. 2013) (requiring "proof of public harm" or recklessness or intent to create such harm).

In assessing whether mens rea is present, courts consider "many factors, including 'the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances.'" *Baker*, 984 N.E.2d at 906 (quoting *People v. Weaver,* 944 N.E.2d 634, 636 (N.Y. 2011)). "[B]ecause 'the practical restraints on police in the field are greater with respect to ascertaining intent[,] . . . the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great.'" *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013) (quoting *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004)) (alterations in original).

a.    <u>Officers Merria and Sirles</u>

Defendants Merria and Sirles had several pieces of information that could be used to infer that Mr. Lalonde had violated the act requirement of the statute. The OPD had received a call regarding an allegedly "intoxicated man who was yelling on the street of Pleasant Avenue." Dkt. No. 90-1 ("Merria SMF") ¶1. Defendant Merria "heard OPD radio traffic regarding the [allegedly] intoxicated male who was yelling on Pleasant Avenue in the City of Ogdensburg." *Id.* ¶2. Defendant Sirles was informed of a "general disturbance, disorderly conduct-type situation." City SMF ¶359 After Defendant Shaver had arrived on scene, Defendants Merria and Sirles

34

heard a male shout "fuck you" on Defendant Shaver's radio transmission. *Id.* ¶361; Merria SMF ¶5. Though he could not have known with certainty that the person responsible for the disorderly conduct was Plaintiff Timothy Lalonde, it was reasonable for Defendants Merria and Sirles to infer that this was the case, since Defendant Shaver was near Mr. Lalonde when those Defendants arrived. Dkt. No. 92-41 at 75–82 ("Merria Deposition"); City SMF ¶365.

Defendants Merria and Sirles had probable cause to believe that the mens rea requirement for the disorderly conduct state had been met. Specifically, Defendant Merria and Sirles could reasonably believe that Plaintiff Timothy Lalonde had recklessly created the risk of "public inconvenience, annoyance, or alarm." N.Y. Penal Law §240.20(2). The initial call to the police was made after midnight, regarding a man yelling on the street. Merria SMF ¶1; Dkt. No. 94-11 ("Redacted Incident Report"). Not only would this predictably lead to public disruption, but a neighbor was sufficiently bothered by the yelling to call the police. *See* Redacted Incident Report. As our sister court reasoned, "the fact that Plaintiff's use of obscenities attracted the attention of at least one neighbor made it objectively reasonable to believe that the conduct went beyond an 'individual dimension' and that Plaintiff had the requisite intent for disorderly conduct." *Smith v. City of New York*, No. 1:18-CV-05079-MKV, 2021 WL 4267525, at *10 (S.D.N.Y. Sept. 20, 2021)

Plaintiffs argue that Mr. Lalonde had "calmed down" by the time Defendant Merria arrived, defeating Defendant's probable cause argument. *See* Resp. to Merria at 6–7. This argument is unavailing, as probable cause is present when there is sufficient reason to belief that an individual has committed an offense, even if the criminal activity has ceased. *See Bernard*, 25 F.3d at 102. What Defendants Merria and Sirles directly observed is relevant, however, for ascertaining the "facts *available to the officer* at the time of the arrest." *Panetta v. Crowley*, 460

35

F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (emphasis in original). As Defendants Merria and Sirles was not the first officer on the scene, they would have reasonably expected other officers to have gathered additional facts regarding the presence of probable cause and the appropriateness of arrest. "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." *Id.* at 395 (quoting *Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002). It was thus reasonable for Defendants Merria and Sirles to rely on the determination of another officer that Mr. Lalonde should be arrested. Merria SMF ¶14; City SMF ¶379. The false arrest claims against Defendants Merria and Sirles are therefore dismissed.

b.  <u>Officer Pryce</u>

Defendant Pryce is unable to rely on the fact that another officer made the determination to make an arrest, since she was the one who began the arrest. *See* City SMF ¶ 272. Nonetheless, Defendant Pryce, like Defendant Merria, had multiple pieces of information supporting the conclusion that Plaintiff Mr. Lalonde had violated the act requirement for disorderly conduct. She "had been dispatched by the OPD dispatcher to an annoying noise complaint near Jay Street concerning a male walking down the street yelling or being loud." City SMF ¶247. En route, she heard on the radio "[Defendant] Shaver and a male subject yelling in the background of the radio frequency." *Id* ¶251. Shaver and Mr. Lalonde were the only two men present, other than Defendants Merria and Sirles, who arrived simultaneously, when Defendant Pryce reached the scene. *Id* ¶¶253–54, 256, 264. Defendant Pryce could have inferred from this that it was Mr. Lalonde who she had heard yelling on the radio. Office Pryce could have reasonably assumed that Defendant Shaver had not instigated an argument or otherwise engage in conduct that would have led Mr. Lalonde to engage heatedly with Defendant Shaver. Alternatively, Defendant Pryce

36

could have inferred that the loud male, Mr. Lalonde, referred to on the dispatch call had continued to be disorderly when approached by Defendant Shaver. There was therefore sufficient evidence that the act requirement of the disorderly conduct statute had been met. *See* N.Y. Penal Law §240.20(2), (3) (with the appropriate conduct, disorderly conduct occurs when an individual "makes unreasonable noise . . . or [in] a public place, . . . uses abusive or obscene language, or makes an obscene gesture."). As the Court's analysis of the mens rea requirement with respect to Defendant Merria applies in full to Defendant Pryce, Defendant Pryce had probable cause to arrest Mr. Lalonde.

c. Officer Shaver

Defendant Shaver, unlike the other Defendants, is unable to rely on the inference that Mr. Lalonde's voice was heard on the radio, as he was the one on scene. *See* City SMF ¶466. Additionally, as Defendant Shaver was the first officer on the scene, *See* City SMF ¶¶ 467–68, it would have made little sense for him to rely on the determination of Defendant Pryce, who came later and thus had no additional information not available to him.

Plaintiffs dispute whether Mr. Lalonde yelled at Defendant Shaver. Pl. Resp. City SMF ¶¶ 481, 492. Plaintiffs' story is questionable. Since it is undisputed that Defendants Pryce, Merria, and Sirles, heard yelling and/or obscenities on Shaver's radio, *see* Pl. Resp. City SMF ¶¶251, 361 it is unclear who those officers would have heard other than Mr. Lalonde. Even if Defendant Shaver did not hear Mr. Lalonde shout "fuck you" at him, but instead, heard Mr. Lalonde shout "fuck you" at Mr. Outlaw so loudly that it was captured on his radio, *see* Pl. SMF ¶¶ 48, 53, this too would support a finding of probable cause for disorderly conduct since it would have been a disruptive obscene noise.

d. Chief Wescott

As Defendant Wescott was not present on scene at the time of the arrest, *see* Dkt. No. 96-11 at 77–78 ("Wescott Deposition"), the Section 1983 false arrest and excessive force claims are dismissed against him. *See Keyes v. Venettozzi*, No. 918CV0372GTSDJS, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) ("With respect to how to establish the personal involvement of supervisory officials, 'a plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation.'") (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001)).

As all Defendants have met their burden on for the claims of false arrest and false imprisonment, the claims are hereby dismissed. As there was probable cause to arrest Mr. Lalonde, the Court does not reach the Defendants' argument regarding qualified immunity.

### 6. Assault and Battery

City Defendants argue that Plaintiffs' Section 1983 assault and battery claims must be dismissed, as they are duplicative with Plaintiffs' Section 1983 excessive force claim. City MSJ at 3. Plaintiffs note that this Court found "that the civil assault and the 'civil battery claim[s] will be allowed to proceed' under New York State law." MDO at 16; Resp. to City at 3. City Defendants respond that "Plaintiffs have ***not*** asserted a ***state law*** assault or battery claim (but rather, a *federal* assault and battery claim). . . . [I]t is respectfully submitted that Plaintiffs' federal assault and battery claim asserted pursuant to [Section] 1983 must be dismissed as duplicative of their excessive force claim." City Reply at 3 (emphasis in original). For the reasons that follow, this Court agrees with City Defendants, and the assault and battery claims are dismissed.

38

Plaintiffs' Complaint clearly states that they intend to bring assault and battery claims under 42 U.S.C. §1983. Compl. at 12. Plaintiffs' "State Claims" section does not mention assault and battery. *See id.* at 31–36. Therefore, Plaintiffs did not bring a state assault or state battery claims, and there are no such claims to dismiss. With respect to the federal Section 1983 assault and battery claims, they are dismissed as duplicative of the excessive force claim. *See Johnston v. City of Syracuse*, No. 5:20-CV-1497, 2021 WL 3930703, at *5 (N.D.N.Y. Sept. 2, 2021) (dismissing the plaintiff's "§ 1983 assault and battery claim as duplicative of his excessive force claim"); *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018), *aff'd*, 765 F. App'x 493 (2d Cir. 2019) ("Plaintiff's . . . causes of action[] alleging an assault and battery under §1983 . . . are properly formulated as excessive force claims"); *Henderson v. Williams*, No. 3:10-CV-1621 JCH, 2013 WL 1984545, at *3 (D. Conn. May 13, 2013) ("[T]here is no federal common law claim for assault or battery.").

### 7. *Excessive Force*

City Defendants argue that they should be granted summary judgment on the excessive force claim because the force used was objectively reasonable. City MSJ at 51–56. In the alternative, they argue that they are entitled to qualified immunity on the excessive force claim. *Id.* at 58–60. The Court addresses each argument in turn.

### A. Objective Reasonableness

Fourth Amendment excessive force claims are reviewed under the standard of objective "reasonableness." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Reasonableness is understood by analyzing "the 'totality of the circumstances,'" not just merely the moment force is used. *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (quoting *Graham*, 490 U.S. at 427–28). To determine whether the force applied was unreasonable, courts analyze "the severity of the

crime," "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The balancing of these factors is imprecise, and "[a]ll that can realistically be expected [of a reviewing court] is to make some assessment as to the extent to which each relevant factor is present and then somehow make an aggregate assessment of all the factors." *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015). Under *Graham*, the officers' "underlying intent or motivation" is irrelevant to the reasonableness inquiry. *See Graham*, 490 U.S. at 397.

Moreover, the extent of the injury is also relevant for courts' consideration of an excessive force claim. *Abreu v. Nicholls*, 368 Fed.App'x. 191, 193 (2d Cir. 2010) ("[T]he extent of injury is a relevant factor."). On one end of the spectrum, "[r]easonable force does not become unconstitutional merely because it caused the plaintiff serious injury." *Walker v. Thibault*, No. 5:22-CV-1088 (MAD/ATB), 2023 WL 7701726, at *4 (N.D.N.Y. Nov. 14, 2023), *aff'd*, No. 23-7896, 2025 WL 294507 (2d Cir. Jan. 24, 2025) (quoting *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 180 (E.D.N.Y. 2002), *aff'd*, 59 F. App'x 409 (2d Cir. 2003)). On the other end of the spectrum, courts in this Circuit sometimes impose a *de minimis* requirement on the injury caused by the use of force. *See Lemmo v. McKoy*, No. 08-CV-4264 RJD, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (arguing that injuries cannot merely be *de minimis*, if a Fourth Amendment excessive force claim is to succeed); *Barcomb v. Kraeger*, No. 3:14CV1159 (JBA), 2016 WL 2644885, at *4 (D. Conn. May 5, 2016) (rejecting such a requirement).

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could

40

conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d at 123.

"Courts in this circuit have found officers' use of force to effectuate an arrest justified when a suspect is resisting arrest by contorting their body or otherwise making it difficult to handcuff them." *Gutierrez v. New York*, No. 18-CV-3621 (MKB), 2021 WL 681238, at *15 (E.D.N.Y. Feb. 22, 2021) (collecting cases). "In addition, tackling or shoving a plaintiff down to the ground can be an objectively reasonable response to a plaintiff resisting arrest." *Id.*

City Defendants argue that on these facts, the factors weigh in favor of Defendants:

[W]here, as here, Timothy, a large male, presented with a hostile, combative demeanor and displayed aggressive pre-fight indicators which were perceived (and it is respectfully submitted, would have been perceived by any reasonable officer in the situation confronting the OPD Officer Defendants) as posing an immediate threat to the safety of the office[r]s on scene, the forced used by each of the individually named OPD Officer Defendants against Timothy as he both actively and passively resisted the officers attempts to arrest him was objectively reasonable under the circumstances.

City MSJ at 55–56. Plaintiffs, alternatively argue that disputed issues of material fact preclude summary judgment. Most importantly, they argue that they "have presented evidence that while holding his blind cane, after Mr. Lalonde raised his arms slightly in response to Defendant Pryce's command, the other three officers tackled him from behind." Resp. to City at 55.

As a preliminary matter, it is necessary to establish which facts are disputed, and which are undisputed. *See Anderson*, 477 U.S. at 248 (holding that summary judgment is inappropriate if there are genuine disputes of material fact). Plaintiffs assert that "[Defendant] Pryce . . . aggressively approached Mr. Lalonde, screaming, 'let me see your hands, let me see your hands' while standing two feet in front of him." Pl. City SMF ¶71. Defendants dispute this, but acknowledge that "the cited materials . . . purport to show . . . that a female officer uttered 'let

me see your hands, let me see your hands,'" and that "Mrs. LaLonde heard a female officer screaming, [though] 'she couldn't understand what she was screaming.'" City Resp. Pl. SMF ¶71 (quoting Dkt. No. 96-2 at 49 (Theresa Lalonde Deposition")). Plaintiffs claim that "Mr. Lalonde . . . in response to Sgt. Pryce's command raised his arms slightly." Pl. SMF ¶77. Defendants acknowledges that the "cited materials purport to show that Mr. LaLonde raised his hands 'halfway' upon the female officer yelling 'let me see your hands' at him three times." City Resp. Pl. SMF ¶77 (quoting Timothy Lalonde Second Dep. at 130). Per Mr. Lalonde's testimony, "then the other three officers hit me in the back and plow[ed] me to the ground." Timothy Lalonde Second Dep. at 131. Defendants acknowledge that the "cited materials . . . purport to show that [witness Mr. Ashley] saw the officers tackle Timothy from behind . . . and there was an audible sound of the wind getting knocked out of Timothy's body." City Resp. Pl. SMF ¶81 (quoting Ashley Decl. ¶16). Defendants present an alternative account, *see* City MSJ ¶¶515–29, but given the conflicting evidence, this Court finds that a reasonable jury could find for Plaintiffs.

Defendants importantly note that the alleged "tackle" "had not been alleged to have resulted in any injury to Mr. LaLonde." City Reply at 56. Plaintiffs claim that "While Mr. Lalonde was face down on the pavement, the officers screamed 'give me your arm' while struggling to wrench his left arm out from under his body." ." Pl. SMF ¶83. City Defendants dispute this, pointing to other evidence in the record, but the rules of summary judgment are clear that the Court should not weigh conflicting evidence. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). Defendants acknowledge that the "cited materials . . . purport to show  . . . that Mrs. Lalonde had no recollection of Mr. Lalonde grabbing any officers and that Mrs. Lalonde, neither saw, nor heard, Mr. Lalonde disobey a command that was given by a police officer." City Resp. Pl. SMF ¶88 (citations omitted).

After being tackled, Mr. Lalonde's left arm was trapped underneath his body. Timothy Lalonde Second Dep. at 133–34. In trying to handcuff Mr. Lalonde's left arm, Defendant officers pulled on it such that "the arm popped." *Id.* at 134. Defendants concede that evidence "purport[s] to show . . . that '[the officers] had fractured [Mr. LaLonde's] wrist and tore his rotator cuff by pulling on [his] arm." City Resp. Pl. SMF ¶87 (quoting Timothy Lalonde Second Dep.). However, City Defendants note that there is no evidence that they (as opposed to Defendant Merria) had contact with Mr. Lalonde's left arm. City MSJ at 55 n. 27; *see also* City MSJ at 543 "Merria was over on Timothy's left arm."). Meanwhile, Mr. Lalonde was tased twice. City Resp. Pl. SMF ¶89.

Subsequently, an eyewitness reports seeing "the female officer jump down with what looked like her knee landing onto Timothy's skull." Ashley Decl. ¶18. As Mr. Lalonde describes, "then the lady officer jumped on my head causing 10 stitches in my ear." Timothy Lalonde Second Dep. at 135. City Defendants dispute this account, *see* City MSJ at 55 n. 57, but on Summary Judgment, the Court makes all reasonable inferences in favor of the non-moving party, *Reeves*, 530 U.S. at 150, the Plaintiffs, which means inferring that the eyewitness accounts supporting Plaintiffs' account are correct.

Mr. Lalonde's injuries from the arrest included, as diagnosed, a dislocated left elbow, a torn rotator cuff on his left shoulder, a fractured left wrist, and laceration of his right ear. Dkt. No. 105-10 at 2 ("Hospital Statement"); Dkt. No. 105-2 at 1 ("Setter Statement"). Mr. Lalonde required surgery on his elbow, first to reinsert the elbow, and then to stabilize it. *See* Pl. SMF at 119–20. Mr. Lalonde has also suffered hearing loss following the incident, though the doctor could not identify the source of the loss. Timothy Lalonde Deposition Dkt. No. 96-3 at 65–67. Mr. Lalonde has also been diagnosed with PTSD, anxiety, and depression, following the

incident. *Id.* at 71. Per Mr. Lalonde's neighbor, Mr. Lalonde "is no longer able to use his left arm, which prior to [the incident], he relied upon to do many of his outside chores." Ashley Decl. ¶23.

For the reasons explained below, when all reasonable inferences are made in favor of Plaintiffs, *Reeves*, 530 U.S. at 150, all of the factors weigh in their favor. Defendants are therefore not entitled to summary judgment with respect to objective reasonableness in their use of force.

First, City Defendants concede that the crime for which Mr. Lalonde was arrested, disorderly conduct, is "not severe in nature." City MSJ at 55.

Second, at no point did Mr. Lalonde "pose an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. When Mr. Lalonde allegedly raised his hands after being asked to do so, Pl. SMF ¶77, any perceived threat to the officers should have been demonstrated to be negligible. Per the neighbor witness, "Upon arriving, the officers instantaneously surrounded and tackled Timothy with his blind cane in hand and as such, there was nothing that I observed or heard that would have placed the officers in fear that Timothy could physically harm them." Ashely Decl. ¶23. Defendants present an alternative account, in which Mr. Lalonde "displayed pre-fight indicators, including making fists" and acting "like a boxer or UFC fighter right before the fight begins." City SMF ¶¶ 507–08. However, as these claims are disputed, *see* Pl. Resp. City SMF ¶¶507–08, the Court will disregard them in ruling on summary judgment, *see Anderson*, 477 U.S. at 248.

City Defendants and Plaintiffs have presented conflicting accounts of what happened when Mr. Lalonde was on the ground. *See generally*, Pl. SMF; City SMF. The City describes Mr. Lalonde as "kicking and still being combative on the ground." City SMF ¶ 286; City SMF ¶299.

Defendants claim that "Whenever [Defendant Pryce] would try to place [Mr. Lalonde's] right arm behind his back, Timothy would grab ahold of her pant legs and push her leg from underneath her." City SMF ¶301. "Anytime DP could get her leg back underneath him and try to pull his arm back, Timothy would then pull his arm away from her and flail it." *Id.* ¶303. It is disputed whether Mr. Lalonde grabbed Defendant Merria. *See* Pl. Resp. City SMF ¶308; *see also* Dkt. No. 96-1 at 38 ("Timothy Lalonde First Deposition") (showing that Mr. Lalonde testified that he did not grab any officers). In the tussle, "[Defendant Pryce] suffered a torn labrum, rotator cuff and bicep tendon, which required her to undergo surgery." City SMF ¶ 312. Purportedly because the officers "were having difficulty gaining control of [Mr. Lalonde's arms]," Defendant Sirles tazed Mr. Lalonde. City SMF ¶413. Plaintiffs deny that Mr. Lalonde resisted at all. *See* Pl. Resp. City SMF ¶532;  Timothy Lalonde First Dep. at 38 ("[D]id you resist? Never once."); Theresa Lalonde Dep. at 21–22 (claiming that Mr. Lalonde was "[l]aying there . . . [s]till" when the officers were on top of him). Weighing the morass of evidence and conflicting claims is beyond the role of this Court in deciding a motion for summary judgment; rather, this Court must make all reasonable inferences in favor of the Plaintiffs. *See McClellan*, 439 F.3d at 144; *Reeves*, 530 U.S. at 150. In doing so, it finds that there are disputed facts regarding whether Mr. Lalonde presented any significant threat to the safety of the officers while lying on the ground.[6] The second factor therefore could weigh in favor of Plaintiffs.

---

[6] The fact that most powerfully points in the direction of believing Defendants' account is that Defendant Pryce suffered significant injury to her arm. *See*  City SMF¶312. However, the injury does not speak for itself with respect to what caused it. Mr. Lalonde's right arm was significantly injured due to flesh-eating bacteria and surgery that "remov[ed] . . . muscles extending from [his] right shoulder, chest, down this spine," and elsewhere. Pl. SMF ¶7. This caus[ed] an exceedingly diminished use of his right side, right arm, and shoulder." *Id.* ¶9. Defendant Pryce claims to have hurt her arm while trying to secure Mr. Lalonde's injured *right* arm. Pryce Dep. at 19–20. Though Ms. Pryce claims that Mr. Lalonde "attempt[ed] to push me, like, away with his right arm," *Id.* it is not clear Mr. Lalonde's right arm would have been

With respect to the third factor, "whether [Mr. Lalonde] [was] actively resisting arrest or attempting to evade arrest by flight," the Court again observes that the accounts from the parties conflicts significantly. As with the question of whether Mr. Lalonde posed a threat, Plaintiffs have presented two party witnesses who claim that Mr. Lalonde was not resisting arrest, *see* Dkt. 96-1; Theresa Lalonde Dep. at 21–22, while Defendant officers claim that Mr. Lalonde was resisting arrest. *See e.g.,* Dkt. No. 96-8 at 132–48 ("Shaver Deposition"); Pryce Dep. at 96, 102–22.  Summary judgment requires that the Court not make credibility assessments or weigh conflicting evidence in determining which party's plausible account is correct. *See McClellan*, 439 F.3d at 144; *Amnesty Am.*, 361 F.3d at 122. As there is a genuine dispute of material fact as to whether Mr. Lalonde was resisting arrest, all three factors could weigh in favor of the Plaintiffs. Thus, the Court finds that Defendants have not met their burden at summary judgment of showing that the use of force was objectively reasonable.

Defendants argue that the injury to Mr. Lalonde is *de minimis*. City MSJ at 55 n. 27. Insofar as a *de minimis* requirement applies, *see Barcomb v. Kraeger*, 2016 WL 2644885 at *4 (holding that no such requirement exists), this argument is unavailing. Mr. Lalonde's injuries are greater than those that have been to sufficient to state a claim. *See e.g.*, *Jackson v. City of New York*, 939 F.Supp. 2d 235, 254 (E.D.N.Y. 2013) (finding that a plaintiff who experienced "contusions to [her] back, tenderness on [her] abdomen, and swelling around [her] wrists," had been sufficiently injured); *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir.), *supplemented*, 108 F. App'x 10 (2d Cir. 2004) (finding that force that "sen[t] pain into [the plaintiff's] arm and lower back and [left] her with a post-concussive syndrome" had caused

---

capable of injuring Pryce. Again, sorting out these conflicting accounts is the role of a finder of fact, not a Court on a motion for summary judgment.

sufficient injury to support an excessive force claim); *Davenport v. Cnty. of Suffolk*, No. 99-CV-3088 JFB, 2007 WL 608125, at \*10–11 (E.D.N.Y. Feb. 23, 2007) (finding that a "bump on [the plaintiff's] head" that received no medical treatment was sufficiently serious to meet the *de minimis* requirement). Therefore, Mr. Lalonde's injuries, which include a torn-rotator cuff, a fractured wrist, a lacerated ear, diminished use of his arm, and hearing loss, are clearly more than *de minimis*. *See* Hospital Statement at 2; Setter Statement at 1; Pl. SMF at 119–20; Timothy Lalonde Deposition Dkt. No. 96-3 at 65–67, 71; Ashley Decl. ¶23.

B. Qualified Immunity

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson,* 555 U.S. at 232). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Brown*, 862 F.3d at 190 (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)). "Controlling authority serves to put officials on notice of what is unlawful; however, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The Supreme Court has instructed courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). In

evaluating a qualified immunity defense for an excessive force claim, "it is 'especially important' that the law be clearly established with a high degree of 'specificity' because '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Collins v. City of New York*, 295 F. Supp. 3d 350, 369 (S.D.N.Y. 2018) (quoting *Mullenix*, 577 U.S. at 12).

   "Moreover, if 'officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context,' the officer is entitled to qualified immunity." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)). "But, if 'it is obvious that no reasonably competent officer' would have taken such action, that officer will not be immune." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Ultimately, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12).

   Defendants rely heavily on a case from the Southern District, which found that, as of September 2020, "there [was] no clearly established law that the use of significant force against a non-compliant but non-threatening arrestee amounts to constitutionally excessive force." *Harris v. Leon*, No. 20 CIV. 10864 (LGS), 2023 WL 2051171, at *7 (S.D.N.Y. Feb. 16, 2023); City MSJ at 59; City Reply at 59.[7] Additionally, "there is no clearly established precedent . . . that prohibits the use of significant force by an officer against an individual who is resisting arrest

---

[7] In the alternative, City Defendants argue that Plaintiffs "have consented to [their] argument and/or abandoned their excessive force claim," as Plaintiffs' Response brief did not respond to the rule statement from *Harris*. City Reply at 60. Though Plaintiffs' Response would not win any awards for legal writing, it identifies that the identifying the level of specificity is crucial in a qualified immunity analysis, and argues that Defendants have identified the wrong level of specificity. Resp. to City at 58. Therefore, Defendant' argument that Plaintiffs have consented to Defendants argument or have abandoned their claim is unavailing.

and is reasonably believed to pose a threat to the officer's safety." *Matusak v. Daminski*, 755 F. Supp. 3d 325, 337 (W.D.N.Y. 2024), *aff'd*, 165 F.4th 702 (2d Cir. 2026) (collecting cases).

However, it is essential in qualified immunity cases that the legal rule at issue be stated with sufficient specificity. *See Collins*, 295 F. Supp. at 369. "[T]aking an arrestee to the ground who is not violent, resisting, or posing a threat to officers or the public violates clearly established law." *Meli v. City of Burlington, Vermont*, 585 F. Supp. 3d 615, 631–32 (D. Vt. 2022) (collecting cases). Plaintiffs have presented evidence that Mr. Lalonde was "not violent, resisting, or posing a threat to officers or the public" when he was taken down by the defendant officers. *See id.*; *see also* Pl. SMF ¶77 (Mr. Lalonde raised his hands before being tackled); Ashely Decl. ¶23 (witness did not observe Mr. Lalonde being threatening). Therefore, making all reasonable inferences in favor of the Plaintiffs, *Reeves*, 530 U.S. at 150, the alleged tackling of Mr. Lalonde may have violated a clearly established right, and City Defendants have not established that they are entitled to qualified immunity.

Additionally, it is clearly established that hitting a suspect in the head who is not "actively resisting" constitutes excessive force. *Bryant v. Hartford*, No. 3:17-CV-01374 (VAB), 2021 WL 4477311, at *13 (D. Conn. Sept. 30, 2021) ("If [the defendant] . . . was no longer on the run or fighting the officers when he was struck on the head and hit on the back of his thigh, then the officers are not entitled to qualified immunity. . . . If [the defendant] was actively resisting . . . however, then the . . . Defendants may be entitled to qualified immunity."); *see also Wong v. Yoo*, 649 F. Supp. 2d 34, 58 (E.D.N.Y. 2009) (finding that hitting a suspect in the head, when the defendant officer "had no reason to fear that plaintiff posed a risk of death or serious injury to him or to others," violated clearly established law). As discussed above, it is disputed whether Mr. Lalonde was resisting arrest when he was allegedly hit in the head by Defendant

49

Pryce's knee. *see* Dkt. 96-1; Theresa Lalonde Dep. at 21–22. Thus, a reasonable jury could find that the knee strike, if it occurred, violated clearly established law. And "[b]ecause a jury could reasonably conclude that the officer violated clearly established law at some point in the encounter, the defendants' motion for summary judgment on the qualified immunity defense is denied." *Dasrath v. City of New York*, No. 15CV766AMDRLM, 2018 WL 10501877, at \*7 (E.D.N.Y. Sept. 25, 2018). This genuine dispute of mateiral fact precludes summary judgement.

### 8. Failure to Intervene

"Police officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Cornell v. Vill. of Clayton*, 691 F. Supp. 3d 608, 620 (N.D.N.Y. 2023) (quoting *Martinez v. City of New York*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) (internal quotations omitted). "To succeed on a failure to intervene claim, a plaintiff must demonstrate that: (1) the defendant had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene." *Id.* (quoting *Wagner v. Hyra*, 662 F. Supp. 3d 274, 285–86 (N.D.N.Y. 2023)). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Pajazetovic v. City of Utica, New York*, No. 618CV1496TJMATB, 2021 WL 4440473, at \*9 (N.D.N.Y. Sept. 27, 2021) (quoting *Sloley v. VanBramer*, 945 F.3d 30, 47 (2d Cir. 2019)). "To determine whether the defendant had a realistic chance to intervene, courts in this Circuit consider a number of factors, including '(1) the number of police officers present; (2) the officers' relative placement; (3) the environment in which the officers acted; [and] (4) the nature of the assault.'" *Bovee v. Auburn Police Dep't*, No. 5:24-CV-

50

1138 (DNH/MJK), 2024 WL 4600030, at *2 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted*, No. 5:24-CV-1138, 2024 WL 4834214 (N.D.N.Y. Nov. 20, 2024) (quoting *Johnson v. City of New York*, No. 15-CV-6915 (ER), 2019 WL 294796, at *9 (S.D.N.Y. Jan. 23, 2019)).

"Failure to intervene claims are 'contingent upon the disposition of the primary claims underlying the failure to intervene claim.' *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) (*quoting Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012)). "A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021).

As this Court is granting summary judgment to defendants on Plaintiffs' false arrest, fabrication of evidence, and deliberate indifference claims, the associated failure to intervene claims also fail. *See id.* Thus, this Court proceeds in its analysis only with respect to the claim that Defendants failed to intervene in the use of excessive force.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Liability may attach where an officer observes or has reason to know: (1) 'that excessive force is being used'; (2) 'that a citizen has been unjustifiably arrested'; or (3) 'that any constitutional violation has been committed by a law enforcement official.'" *Jones v. City of Mount Vernon*, No. 22-CV-414 (NSR), 2023 WL 2118026, at *5 (S.D.N.Y. Feb. 17, 2023) (quoting *Anderson*, 17 F.3d at 557). "If [an] officer was a direct participant in the excessive force violation, the failure to intervene theory will be inapplicable." *Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750,

51

at *6 (S.D.N.Y. Aug. 12, 2016). However, a plaintiff may plead in the alternative, where a reasonable factfinder could find that a particular defendant did not use excessive force, but failed to prevent another defendant from doing so. *See Buchy v. City of White Plains*, No. 14 CV 1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015); *see also Cumberbatch v. Port Auth. of New York & New Jersey*, No. 03 CIV. 749 (BSJ), 2006 WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006).

As the officers are differently situated, the Court analyzes Defendant Pryce, Defendants Shaver, Sirles, and Merria, and Defendant Wescott, separately.

### a.    Defendant Pryce

Plaintiffs claim that Defendant Pryce did not partake in the alleged initial tackle of Mr. Lalonde. *See* Timothy Lalonde Second Dep. at 131. In Plaintiffs' account, at the moment of the tackle, she had just ordered Mr. Lalonde to show his hands, and was standing nearby. *Id.* at 130–31. The Court acknowledges that there is conflicting evidence over whether a tackle took place, and whether Defendant Pryce partook in the initial contact with Mr. Lalonde. *See e.g.,* Dkt. No. 92-39 at 78–81 ("Sirles Deposition"). City Defendants argue that there is no evidence that Defendant Pryce "had any realistic opportunity to intervene to stop [the use of force], as [she was] actively attempting to gain Timothy's compliance." City MSJ at 58 n. 29. However, when Mr. Lalonde fell to the ground, there is a genuine dispute of fact regarding City Defendant's description. A reasonable factfinder could conclude that Defendant Pryce could see any use of excessive force and could have prevented it, but did not. Therefore, Defendant Pryce is not entitled to summary judgment on the excessive force claim.

b.  Defendants Shaver, Sirles, and Merria

As Defendants Shaver, Sirles, and Merria partook in the alleged tackle, *see* Timothy Lalonde Second Dep. at 131, they cannot be found liable for failing to intervene in that tackle. *See Sanabria*, 2016 WL 4371750 at *6. While Mr. Lalonde was on the ground, Defendants Sirles Shaver, and Merria were on top of him, attempting to handcuff him. *See* City SMF at 393–401, 529–34; Merria MSJ at 20. Plaintiffs have not alleged facts indicating that Defendants Shaver, Sirles, and Merria would have been in a position to intervene prior to her allegedly kneeing Mr. Lalonde in the head. *See* Pl. SMF 87–90. Rather, Plaintiffs make a conclusory argument that Defendant Shaver "permitted Officers Pryce, Sirles, and Deputy Merria . . . to participate in deploying a quantum of force incommensurate with Mr. Lalonde's actions." City MSJ at 29. This is not enough for Plaintiffs to meet their burden at summary judgement of presenting sufficient evidence for a reasonable jury to conclude that Defendant Shaver or other Defendants had a "realistic opportunity" to prevent other officers' excessive use of force, specifically Defendant Pryce's alleged knee to the head. *See Pajazetovic*, 2021 WL 4440473, at *9. As Defendants Shaver, Sirles, and Merria are entitled to summary judgment, the failure to intervene claims against Defendants Shaver, Sirles, and Merria, are therefore dismissed.

c.  Defendant Wescott

Defendant Wescott was not on the scene when excessive force was allegedly used against Mr. Lalonde. S*ee* Dkt. No. 96-11 at 77–78 ("Wescott Deposition") Therefore, he could not possibly have intervened. Plaintiffs' failure to intervene claim against Defendant Wescott is thus dismissed.

**D. Section 1985(3) Class-based Conspiracy**

Plaintiffs claim that Defendant officers engaged in a conspiracy to deprive Plaintiff Mr.

Lalonde of his rights, based on his status as a disabled person. Compl. ¶¶138–46. City

Defendants and Defendant Merria move for summary judgment. Merria MSJ at 20–23; City MSJ

at 22–25.

> [T]o state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a
> conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or
> class of persons of the equal protection of the laws, or of equal privileges and immunities
> under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is
> either injured in his person or property or deprived of any right or privilege of a citizen of
> the United States

MDO at 29–30 (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). A

"Section 1985 conspiracy claim require[s] a showing of an underlying constitutional violation."

*Edwards v. Horn*, No. 10 CIV. 6194 RJS JLC, 2012 WL 473481, at *19 (S.D.N.Y. Feb. 14,

2012), *report and recommendation adopted*, No. 10 CIV. 6194 RJS JLC, 2012 WL 760172

(S.D.N.Y. Mar. 8, 2012). "The conspiracy must also be 'motivated by some racial or perhaps

otherwise class-based, invidious discriminatory animus.'" *Dolan v. Connolly*, 794 F.3d 290, 296

(2d Cir. 2015) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Mere membership in a protected class is insufficient to show animus. *Posr v. Ct. Officer Shield

No. 207*, 180 F.3d 409, 419 (2d Cir. 1999).

To demonstrate that a conspiracy was formed, "a plaintiff 'must provide some factual

basis supporting a meeting of the minds, such that defendants entered into an agreement, express

or tacit, to achieve the unlawful end.'" *Webb*, 340 at 110 (quoting *Romer v. Morgenthau*, 119

F.Supp. 2d 346, 363 (S.D.N.Y. 2000)). "Conspiracy claims under § 1985(3) must contain

specific factual allegations, and a complaint consisting of nothing more than conclusory or vague

allegations of conspiracy is insufficient to survive a motion to dismiss." *Oquendo v. Dep't of*

54

*Correction*, No. 3:16-CV-1709 (MPS), 2018 WL 1069577, at *4 (D. Conn. Feb. 27, 2018) (quoting *Doe v. Mastoloni*, No. 3:14-CV-00718 (CSH), 2016 WL 593439, at *16 (D. Conn. Feb. 12, 2016)). Defendants argue that Plaintiffs have not presented sufficient evidence that any conspiracy was motivated by animus directed at Mr. Lalonde's disability. Merria MSJ at 21; City MSJ at 20. Plaintiffs argue, by contrast, that "the unprovoked, forceful arrest of Mr. Lalonde while adjacent to his residence, wearing darkened sunglasses and holding a blind cane in his hand, allows for a reasonable inference that Mr. Lalonde's disability was an animating cause for the officers' decision[s]." Resp. to City at 27. On this point, the Court agrees with Defendant. The mere fact of Mr. Lalonde's disability is insufficient to demonstrate that the Defendants' actions were motivated by animus towards that disability. *See Posr*, 80 F.3d at 419.

Plaintiffs present additional evidence of animus, but from events after the alleged constitutional violation. For instance, in the police station, an officer threatened to shoot Mr. Lalonde if he (accidentally) touched one of them again. Pl. SMF ¶107. Throwing Mr. Lalonde headfirst into the police car, after learning that he could not sit up properly in the police car, may also be evidence of anti-disability animus. See Pl. SMF ¶98. Pulling the disabled Mr. Lalonde out of the police car by his feet, such that he fell to the ground, and then pulling him off the ground by his belt and pants such that they ripped, might also be evidence of anti-disability animus. See Pl. SMF ¶¶104–05. However, these instances took place after the alleged underlying constitutional violation at issue: the use of force against Mr. Lalonde. *See generally*, Pl. SMF. None of these potential indications of animus are sufficient to establish that there was a conspiracy motivated by said animus. *Dolan*, 794 F.3d at 296.  Insofar as Defendants formed a conspiracy to brutalize Mr. Lalonde, Plaintiffs present no evidence that they agreed to do so because Mr. Lalonde is disabled. Therefore, Defendants are entitled to summary judgment on the

Section 1985(3) conspiracy claim, which is hereby dismissed.

**E. Section 1986 Neglect to Prevent a Conspiracy**

"Section 1986 'provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)); *see also* 42 U.S.C. § 1986. "A claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994). As this Court has granted Defendants summary judgment on Plaintiffs' Section 1985(3) conspiracy claim, *see supra* section IV(D), it also dismisses Plaintiffs' Section 1986 claims, *see Gagliardi*, 18 F. 3d at 194.

## V. CONCLUSION

Defendant Merria's Motion has been granted in full. However, as he did not move on the excessive force claim, the excessive force claim against Defendant Merria survives. County Defendants' Motion is granted in full, and all claims against County Defendants have been dismissed. City Defendants Motion has been granted in part, and denied in part. The excessive force claim against Defendants Pryce, Shaver, and Sirles, and the failure to intervene claim against Defendant Pryce, survive. All other claims against City Defendants have been dismissed.

Accordingly, it is hereby:

**ORDERED**, that Defendant Merria's Motion, Dkt. No. 90 is **GRANTED**; and it is further

**ORDERED**, that County Defendants' Motion, Dkt. No. 92 is **GRANTED**; and it is further

**ORDERED**, that City Defendants' Motion, Dkt. No. 94 is **GRANTED** in part and

**DENIED** in part; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 31, 2026
        Albany, New York

LAWRENCE E. KAHN
United States District Judge